The STATE of Ohio, Appellee,

v.

NOGGLE, Appellant.

[Cite as *State v. Noggle* (2000), 140 Ohio App.3d 733.]

· Court of Appeals of Ohio,
Third District, Crawford County.

No. 3–2000–09.

Decided Sept. 18, 2000.

*Russell B. Wiseman,* Crawford County Prosecuting Attorney, for appellee.

*David D. Carto,* for appellant.

WALTERS, Judge.

Appellant, William Noggle, Jr., appeals a judgment of conviction of the Court of Common Pleas of Crawford County, rendered pursuant to a jury verdict of guilty on one count each of aggravated murder with a capital offense specification and firearm specification, aggravated burglary with a firearm specification, aggravated arson, burglary, tampering with evidence, and abuse of a corpse. For the reasons that follow, we affirm in part and reverse in part the judgment of the trial court and remand the cause for further proceedings.

The record herein reflects the following pertinent evidence. At the time the offenses occurred, the decedent, Raymond Campbell, age eighty-one, was living alone on his one-hundred acre farm on State Route 96 in a rural section of

Crawford County. Appellant, who was sixteen years old when the offenses occurred, lived with his family on the opposite side of State Route 96 across from the Campbell farm.

During the late hours of May 12, 1998, and the early hours of May 13, 1998, appellant and an accomplice, Robert Martin, broke into Raymond Campbell's home armed with a loaded .22 caliber rifle and began searching the home for money and blank checks. As a result of the commotion, Campbell awoke and confronted the two men outside his bedroom. Subsequently, Campbell was shot and killed, his home was ransacked, and a significant number of blank checks were stolen.

For the next two days appellant and Robert Martin had several conversations regarding the disposal of Campbell's body. Eventually, the two decided to burn down appellant's home to make the incident look like an accident. On May 15, 1998, Robert Martin, appellant, and appellant's younger brother, John, returned to the Campbell farm. The three individuals retrieved gas and oil from Campbell's garage and then proceeded to spread the gas and oil on Campbell's body and throughout his home. Additionally, more blank checks were stolen from the home.

Thereafter, appellant drove Robert Martin home and returned to the Campbell farm. Appellant then ignited the gas and oil and quickly returned home. After discovering that his attempt was unsuccessful, appellant and his brother returned approximately thirty minutes later to spread more gas and oil throughout Campbell's home. After appellant successfully ignited the gas and oil he returned home again. Once the house became visibly engulfed in flames appellant called 911 emergency services and reported the fire at the Campbell farm. Firefighters responded shortly thereafter and the fire was subsequently extinguished; however, Campbell's home was completely destroyed. Shortly after the fire was extinguished Campbell's body was discovered.

Later in the day on May 15, 1998, authorities received a telephone call from Mrs. Carman, the guidance counselor at Colonel Crawford High School. Mrs. Carman informed authorities that there were several students at the high school who were upset about rumors they heard regarding the fire at the Campbell farm. Detective Jim Davis of the Crawford County sheriff's office responded to the high school to investigate the matter.

At that time, detective Davis discovered that Rodney Martin, Jr., Robert Martin's younger brother, had information regarding appellant's involvement in the crime. Rodney Martin, Jr. and his father and grandfather then accompanied detective Davis to the Crawford County Sheriff's Office where detective Davis conducted a videotaped interview of Rodney Martin, Jr. Following the interview, detective Davis received permission to conduct a controlled telephone conversa-

tion between Rodney Martin, Jr. and appellant. During the telephone conversation, appellant, who was not aware the police were listening, indicated his involvement in the crime and provided specific details of the offenses with which he was charged.

Two days later, on May 17, 1998, appellant was located and brought to the Crawford County Sheriff's Office for questioning; however, he was not placed under arrest at that time. Appellant's father was present at the sheriff's office and consented to the interview of his son. During the interview, appellant confessed to his involvement in the crimes and provided detective Davis with explicit details of his acts and the acts of Robert Martin. However, appellant maintained throughout the interview that it was Robert Martin, and not he, who shot Raymond. At the completion of the interview appellant was placed under arrest.

Thereafter, the current action originated in the Crawford County Juvenile Court. However, appellant was bound over to the court of common pleas to be tried as an adult pursuant to R.C. 2151.26(B)(3)(a) and Juv.R. 30(B). On June 2, 1998, a Crawford County Grand Jury returned a six-count indictment against appellant for one count of aggravated murder in violation of R.C. 2903.01, a first-degree felony, with a capital offense specification pursuant to R.C. 2929.04(A)(7), and a firearm specification pursuant to R.C. 2941.145. Additionally, appellant was indicted on one count each of aggravated burglary in violation of R.C. 2911.11, a first-degree felony, with a firearm specification pursuant to R.C. 2941.145; aggravated arson in violation of R.C. 2909.02, a second-degree felony; burglary in violation of R.C. 2911.12, a third-degree felony; tampering with evidence in violation of 2921.12, a third-degree felony; and abuse of a corpse in violation of R.C. 2927.01, a fifth-degree felony.

Appellant pled not guilty to the charges on June 4, 1998, but changed his plea to guilty on June 15, 1998, in exchange for the state's agreement to recommend a lesser sentence. The trial court accepted appellant's plea and found him guilty on all counts. In a judgment entry dated February 8, 1999, the trial court sentenced appellant accordingly.

Thereafter, on February 10, 1999, appellant filed a notice of appeal in this court. On June 24, 1999, this court reversed the decision of the trial court, holding that "Crim.R. 11 and R.C. 2945.06 require when a plea is accepted to both the charge and one or more specifications, that a panel of three judges *shall* determine whether the offense was aggravated murder or a lesser offense and then that panel shall follow the correct procedure regarding sentencing." See *State v. Noggle* (June 24, 1999), Crawford App. No. 3–99–08, unreported, 1999 WL 446440.

Upon remand to the trial court, appellant pled not guilty by reason of insanity pursuant to Crim.R. 11(F). On October 28, 1999, appellant filed a motion to suppress the videotaped confession and later supplemented the motion to include the audiotape of the controlled telephone conversation. The trial court denied appellant's motion on January 21, 2000. Subsequently, a jury convicted appellant on all six counts and both specifications in the original indictment. In a judgment entry dated February 29, 2000, the trial court sentenced appellant accordingly.

Appellant timely appeals the judgment of the trial court, assigning six errors for our review.

### Assignment of Error No. 1

"The trial court committed prejudicial error by overruling Defendant–Appellant's motion to suppress his statement given to police upon the grounds that there was an insufficient showing that the Defendant–Appellant knowingly and voluntarily waived his constitutional rights against self-incrimination and to counsel prior to making the statement."

This court has previously held that the standard of review regarding motions to suppress is whether the trial court's findings are supported by competent, credible evidence. *State v. Vance* (1994), 98 Ohio App.3d 56, 58–59, 647 N.E.2d 851, 852–853; *State v. Daisy* (Feb. 3, 2000), Hardin App. No. 6–99–7, unreported, 2000 WL 123802. "At a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact." *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, 982. However, an appellate court will make an independent determination of the law as applied to the facts. *Vance*, at 59, 647 N.E.2d at 852–853.

Appellant argues that the statements he made during a videotaped confession to detective Davis on May 17, 1998, should have been suppressed because, under the totality of the circumstances, they were not made knowingly, intelligently, and voluntarily pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Thus, he argues that the statements were used against him in violation of his right against self-incrimination under the Fifth Amendment to the United States Constitution. The state, however, initially claims that *Miranda* is inapplicable because appellant was not in custody when he made the statements. Notwithstanding, the state suggests that under the totality of the circumstances appellant's statements were made knowingly, intelligently, and voluntarily.

In *Miranda*, the United States Supreme Court set forth guidelines for the states to follow in preserving a criminal suspect's Fifth Amendment right against self-incrimination. *State v. Walker* (1993), 90 Ohio App.3d 352, 360, 629

N.E.2d 471, 475–476. The Fifth Amendment right against self-incrimination applies equally to juveniles and adults. *In re Gault* (1967), 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527. "*Miranda* mandates that all individuals who are taken into official custody must be advised of their constitutional rights under the Fifth and Sixth Amendments, and be given the chance to voluntarily waive those rights before being interrogated about suspected misbehavior." *Walker*, at 360, 629 N.E.2d at 476. This ensures that any statement made by a suspect is voluntary and not coerced. *Id.*

However, only a "custodial interrogation triggers the need for a *Miranda* rights warning." *State v. Mason* (1998), 82 Ohio St.3d 144, 153, 694 N.E.2d 932, 946; *State v. Gumm* (1995), 73 Ohio St.3d 413, 429, 653 N.E.2d 253, 268. "[T]he determination as to whether a custodial interrogation has occurred requires an inquiry into 'how a reasonable man in the suspect's position would have understood his situation.'" *Mason, supra*, at 154, 694 N.E.2d at 946, quoting *Berkemer v. McCarty* (1984), 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317, 336. "In judging whether an individual has been placed into custody the test is whether, under the totality of the circumstances, a 'reasonable person would have believed that he was not free to leave.'" *Gumm, supra*, at 429, 653 N.E.2d at 268, quoting *United States v. Mendenhall* (1980), 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509. " '[T]he ultimate inquiry is simply whether there is a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.'" *Mason*, at 154, 694 N.E.2d at 946, quoting *California v. Beheler* (1983), 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275, 1279.

The initial question is whether appellant was ever placed in custody. The record reflects that on May 17, 1998, appellant was located in Marion, Ohio by detective Davis and brought to the Crawford County Sheriff's Office for questioning. Appellant was not placed under arrest at that time. Appellant's father also accompanied detective Davis and appellant to the sheriff's office. Detective Davis read appellant the *Miranda* rights prior to transferring him to the sheriff's office but did not interrogate appellant prior to arriving there.

At the sheriff's office, appellant and his father were seated in an interview room where detective Davis again read the *Miranda* rights to appellant. Detective Davis also showed appellant and his father the *Miranda* rights in writing. Both appellant and his father verbally acknowledged that they understood the rights given to them and then signed a waiver of those rights. Appellant's father then left the interview room to speak with appellant's mother. However, appellant's father consented to the interview of his son outside his presence.

Thereafter, detective Davis again explained the *Miranda* rights to appellant and showed appellant his signed waiver of those rights. Appellant initially indicated that he did not understand the rights explained to him but subsequently acknowledged that he did understand them. After receiving a verbal confirmation that appellant understood the rights explained to him, detective Davis proceeded to conduct the interview.

■ After examining the evidence under the totality of the circumstances, we are not persuaded that the interview conducted at the sheriff's office on May 17, 1998, was custodial in nature. The record reflects that appellant was not placed under arrest prior to the interview. "An arrest occurs when the following four requisite elements are involved: (1) An intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested." *State v. Barker* (1978), 53 Ohio St.2d 135, 139, 7 O.O.3d 213, 215, 372 N.E.2d 1324, 1328, citing *State v. Terry* (1966), 5 Ohio App.2d 122, 128, 34 O.O.2d 237, 240, 214 N.E.2d 114, 119. Instead, the record reflects that appellant voluntarily accompanied detective Davis to the sheriff's office.

■ Assuming, *arguendo*, that the interview was custodial in nature, appellant argues that because of his age and diminished IQ, he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights. Additionally, appellant argues that prior to the interview he was advised that his father was his "legal advisor," which could be mistaken to mean that his right to counsel during questioning had been satisfied. We disagree.

In *Barker, supra,* at paragraph two of the syllabus, the Supreme Court of Ohio held:

■ "In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. (Second paragraph of the syllabus in *State v. Edwards* [ (1976) ], 49 Ohio St.2d 31 [3 O.O.3d 18, 358 N.E.2d 1051], approved and followed.)" See, also, *Mason, supra,* at 154, 694 N.E.2d at 946–947.

■ Regarding juveniles, however, the court stated:

"When a minor is sought to be interrogated, the question of whether he intelligently and voluntarily waives his rights cannot always be decided by the same criteria applied to mature adults. * * * Such criteria necessarily varies with certain factors as the age, emotional stability, physical condition, and mental capacity of the minor." *State v. Bell* (1976), 48 Ohio St.2d 270, 277, 2 O.O.3d 427,

431, 358 N.E.2d 556, 562, reversed on separate grounds in *Bell v. Ohio* (1978), 438 U.S. 637, 98 S.Ct. 2977, 57 L.Ed.2d 1010.

The state bears the burden of proving, by a preponderance of the evidence, the voluntariness of a confession. *Gumm, supra,* at 429, 653 N.E.2d at 268.

After examining the evidence under the totality of the circumstances, we are convinced that appellant's statements were made knowingly, intelligently, and voluntarily. The record reflects that the police made a thorough effort on three separate occasions to warn appellant of his *Miranda* rights and obtain from him an acknowledgement that he understood and waived these rights. Despite appellant's age and diminished mental capacity, we are not persuaded by the argument that he was not aware of the situation and the ramifications of his statements.

Additionally, we are not persuaded by appellant's argument regarding the appointment of counsel. Appellant was merely advised that his father *could* act as his legal counsel if he desired. Appellant was never advised that his right to counsel had been satisfied.

Therefore, we hold that the trial court's findings of fact are supported by competent, credible evidence and, thus, the court did not err in denying appellant's motion to suppress the videotaped confession.

Accordingly, appellant's first assignment of error is not well taken and is therefore overruled.

### Assignment of Error No. 2

"The trial court committed plain error by permitting the hearsay statements of Defendant–Appellant's co-conspirators and/or accomplices to be admitted into evidence, in violation of Defendant–Appellant's constitutional right of confrontation."

In *State v. Moreland* (1990), 50 Ohio St.3d 58, 63, 552 N.E.2d 894, 899–900, the Supreme Court of Ohio held that the reversal of a conviction under a plain error analysis is only warranted if the error clearly altered the outcome of the case. An alleged error " 'does not constitute a plain error [or defect under Crim.R. 52(B)] unless, but for the error, the outcome of the trial clearly would have been otherwise.' " *State v. Getsy* (1998), 84 Ohio St.3d 180, 192–193, 702 N.E.2d 866, 881, quoting *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, at paragraph two of the syllabus; see, also, *State v. Whitaker* (Feb. 22, 2000), Allen App. No. 1–99–52, unreported, 2000 WL 196644. Additionally, "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Long,* at paragraph three of the syllabus.

After reviewing the record herein, we are not convinced that the trial court committed plain error by admitting into evidence the videotaped statements. But for the alleged errors, the outcome of the trial clearly would not have been otherwise. Essentially, the record is replete with additional evidence, with which a reasonable jury could find appellant guilty beyond a reasonable doubt.

Additionally, we note that plain error cannot be used to negate a deliberate, tactical decision by trial counsel. *State v. Clayton* (1980), 62 Ohio St.2d 45, 46–48, 16 O.O.3d 35, 35–37, 402 N.E.2d 1189, 1190–1192, citing *State v. Wolery* (1976), 46 Ohio St.2d 316, 75 O.O.2d 366, 348 N.E.2d 351. It is apparent that defense counsel's decisions regarding the witnesses' testimony were tactical. By introducing the videotaped statements at trial, defense counsel sought to portray appellant as an individual who was incapable of committing the murder. Had he called these individuals as witnesses at trial, defense counsel risked the possibility that they would have recanted their testimony and then implicated appellant as the individual responsible for the murder. The end result would have damaged the credibility of appellant's witnesses.

Accordingly, appellant's second assignment of error is not well taken and is therefore overruled.

### Assignment of Error No. 3

"The trial court committed plain error by admitting into evidence statements allegedly made by Defendant–Appellant in a police-controlled recorded phone conversation with a juvenile who did not testify at trial, contrary to Evid.R. 901 and in violation of Defendant–Appellant's constitutional right of confrontation."

Appellant argues that the contents of the controlled telephone conversation were not properly authenticated pursuant to Evid.R. 901, which states in pertinent part:

"(A) The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

"(B) By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule.

"* * *

"(6) Telephone conversations, by evidence that a call was made to the number assigned at the time by the telephone company to a particular person * * * if (a) in the case of a person, circumstances, including self-identification, show the person answering to be the one called * * *."

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The state, however, argues that the trial court did not commit plain error by admitting into evidence the contents of the controlled telephone call because the failure to object to its introduction was a deliberate tactical decision by trial counsel. Specifically, the defense trial strategy was to avoid calling Rodney Martin, Jr. as a witness. The state argues that such testimony would have been detrimental to appellant's argument that he was incapable of either planning the murder or shooting Raymond Campbell. The state directs our attention to *Clayton, supra,* in support of the argument that plain error cannot be used to negate the effect of a tactical decision.

The record reflects that appellant's failure to object to the introduction of the audiotape into evidence was likely a tactical decision. If appellant had objected to the admission of the tape the state would simply have called Rodney Martin, Jr. to testify that the person he spoke with during the controlled telephone call was indeed appellant. Therefore, pursuant to *Clayton, supra,* appellant cannot now argue plain error to negate this decision.

Assuming, *arguendo,* that it was error for the trial court to admit the contents of the telephone call into evidence, the outcome of the trial clearly would not have been otherwise. Even without the admission of the contents of the audiotape, there is ample remaining evidence in the record, with which a reasonable jury could find appellant guilty beyond a reasonable doubt.

Accordingly, appellant's third assignment of error is not well taken and is therefore overruled.

### Assignment of Error No. 4

"Defendant–Appellant was denied his constitutional right to effective assistance of counsel at trial as a result of counsel's prejudicial waiver of his constitutional right of confrontation."

▮▮▮▮ The Sixth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, guarantees criminal defendants the right to the effective assistance of counsel. *State v. Johnson* (1986), 24 Ohio St.3d 87, 99, 24 OBR 282, 292, 494 N.E.2d 1061, 1071 (Wright, J., concurring in part and dissenting in part). The Supreme Court of Ohio set forth the test for determining ineffective assistance of counsel as:

▮▮▮▮ "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (*State v. Lytle* [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; *Strickland v. Washington* [1984], 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674], followed.)

■ "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, at paragraphs two and three of the syllabus.

■ The burden of proving ineffectiveness lies with appellant. *State v. Smith* (1985), 17 Ohio St.3d 98, 100, 17 OBR 219, 220–221, 477 N.E.2d 1128, 1130–1131.

Appellant argues that his trial counsel violated his constitutional right to effective assistance of counsel by introducing into evidence several videotaped statements of alleged co-conspirators. Additionally, appellant argues that his trial counsel made several inappropriate remarks during the course of the trial.

■ After examining the record, however, we find that defense counsel's conduct was tactical in nature. The law is clear that "[d]ebatable trial tactics do not constitute ineffective assistance of counsel." *State v. McNeill* (1998), 83 Ohio St.3d 438, 449, 700 N.E.2d 596, 608, citing *Clayton, supra,* at 49, 16 O.O.3d at 37–38, 402 N.E.2d at 1192. Notwithstanding, appellant has not sustained his burden, pursuant to *Bradley, supra,* that there exists a reasonable probability that the result of the trial would have been different were it not for the alleged errors.

Accordingly, appellant's fourth assignment of error is not well taken and is therefore overruled.

For the purpose of clarity, we will address appellant's fifth and sixth assignments of error in reverse order.

### Assignment of Error No. 6

"The trial court committed prejudicial error when it improperly and erroneously answered a question by the jury regarding the proof necessary to support a conviction of the capital offense specification set forth in R.C. 2929.04(A)(7)."

R.C. 2929.04 contains the criteria for imposing a life imprisonment sentence for a capital offense. Appellant was charged with the capital offense specification in R.C. 2929.04(A)(7), which states:

"The offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson, aggravated robbery, or aggravated burglary, and either the offender was the principal offender in the commission of the aggravated murder or, if not the principal offender, committed the aggravated murder with prior calculation and design."

The specification contained in R.C. 2929.04(A)(7) is satisfied if either the offender was the principal offender in the commission or attempted commission of

one of the specified offenses, or if the aggravated murder was committed with prior calculation and design. The trial court instructed the jury, in part, as follows:

"A person acts with prior calculation and design when, by engaging in a distinct process of reasoning, he forms a purpose to kill and plans the method he intends to use to cause the death."

During their deliberation of the capital specification contained in R.C. 2929.04(A)(7), the jury asked the following question of the trial court judge regarding prior calculation and design:

"Does it mean that they were one hundred percent planning to shoot Mr. Campbell or does it mean that they were prepared to kill him if the situation called for it?"

In response, the trial court judge stated that either/or would be sufficient to satisfy the *mens rea* element of proof that the murder was committed with prior calculation and design.

Regarding the element of prior calculation and design, the Supreme Court of Ohio has held:

"In a capital case prosecuted under R.C. 2903.01(A), 'prior calculation and design' is a more stringent element than the 'deliberate and premeditated malice' which was required under prior law. R.C. 2903.01(A) construed.

■ "Instantaneous deliberation is not sufficient to constitute 'prior calculation and design.'

■ "Where evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified." *State v. Cotton* (1978), 56 Ohio St.2d 8, 10 O.O.3d 4, 381 N.E.2d 190, at paragraphs one, two, and three of the syllabus. See, also, *State v. Palmer* (1997), 80 Ohio St.3d 543, 687 N.E.2d 685; *State v. Taylor* (1997), 78 Ohio St.3d 15, 676 N.E.2d 82; *State v. Claytor* (1991), 61 Ohio St.3d 234, 574 N.E.2d 472; *State v. Solomon* (1981), 66 Ohio St.2d 214, 20 O.O.3d 213, 421 N.E.2d 139; and *State v. Pierce* (1980), 64 Ohio St.2d 281, 18 O.O.3d 466, 414 N.E.2d 1038.

■ Appellant argues that the trial court erred in its response to the jury's question regarding the capital offense specification. Specifically, appellant argues that merely being prepared to kill if the situation calls for it does not amount to prior calculation and design that is necessary to sustain a conviction pursuant to R.C. 2929.04(A)(7). We agree.

Our decision is supported by the Supreme Court of Ohio's decision in *State v. Reed* (1981), 65 Ohio St.2d 117, 19 O.O.3d 311, 418 N.E.2d 1359. In *Reed,* the defendant was convicted of aggravated murder in violation of R.C. 2903.01 for purposefully, and with prior calculation and design, causing the death of another. The court noted, however, that the only evidence of prior calculation and design, other than the murder itself, was a statement by the defendant one month prior to the murder that "if a cop got in his way (during a robbery) he would blow him away." *Id.* at 119, 19 O.O.3d at 312, 418 N.E.2d at 1361. The court then stated:

"In the case at bar, the evidence regarding the killing at most indicates the presence of instantaneous deliberation. The statements appellant made to a classmate that he would kill any police officer who got in his way of a crime he might commit do not show that appellant designed a scheme in order to implement a calculated decision to kill." *Id.* at 121, 19 O.O.3d at 314, 418 N.E.2d at 1362–1363.

We find the analysis in *Reed* to be persuasive in resolving the current issue. Although there is no evidence in *Reed* that the jury was incorrectly instructed regarding the legal definition of prior calculation and design, the court held that the facts therein constituted, at most, instantaneous deliberation. The statements made by the defendant that he would kill someone who got in his way do not amount to a scheme designed to implement a calculated decision to kill.

In applying this analysis to the case *sub judice,* we find that the instructions given by the trial court in response to the jury's question allowed the jury to weigh the facts of the case and find prior calculation and design based on instantaneous deliberation, which belies the holding in *Cotton, supra.* Therefore, after reviewing the jury instructions, and the trial court's response to the jury's question, we conclude that the trial court misstated the law regarding the *mens rea* element necessary to find prior calculation and design.

Although the trial court erred in instructing the jury, we must now determine whether that error was harmless or prejudicial. "Harmless error" is defined in Crim.R. 52(A) as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights * * *" "To be deemed nonprejudicial, error of constitutional dimension must be harmless beyond a reasonable doubt." *State v. Williams* (1983), 6 Ohio St.3d 281, 6 OBR 345, 452 N.E.2d 1323, at paragraph three of the syllabus. "Error, in order to be construed as prejudicial error, must be an incorrect statement of the law." *State v. Sargent* (1975), 41 Ohio St.2d 85, 91, 70 O.O.2d 169, 172, 322 N.E.2d 634, 639.

Regarding appellate review of jury instructions, the Supreme Court of Ohio stated:

"A jury charge must be considered as a whole and a reviewing court must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." *Becker v. Lake Cty. Mem. Hosp. West* (1990), 53 Ohio St.3d 202, 208, 560 N.E.2d 165, 171, citing *Ohio Farmers Ins. Co. v. Cochran* (1922), 104 Ohio St. 427, 135 N.E. 537, at paragraph six of the syllabus. See, also, *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 210, 24 O.O.3d 316, 317–318, 436 N.E.2d 1001, 1003–1004; *State v. Price* (1979), 60 Ohio St.2d 136, 14 O.O.3d 379, 398 N.E.2d 772, at paragraph four of the syllabus.

In the absence of the erroneous jury instruction, the remaining alternative necessary to sustain a conviction on the capital offense specification is that appellant was the principal offender in the commission or attempted commission of one of the specified offenses. Based on the record before us, however, there is insufficient evidence, with which a reasonable jury could find that appellant was the principal offender in the murder. Therefore, after reviewing the jury instructions given by the trial court, we find that the error was prejudicial in nature.

Accordingly, appellant's sixth assignment of error is well taken and is therefore sustained.

### Assignment of Error No. 5

"There was insufficient admissible evidence presented at trial to support the capital offense specification set forth in R.C. 2929.04(A)(7), for the reason that it was not proven that Defendant–Appellant was the principal offender in the offense of aggravated murder or that he committed the aggravated murder with prior calculation and design."

Because we held above that the trial court's jury instruction regarding the capital offense specification constitutes prejudicial error, the matter shall be remanded to the trial court and, as such, we cannot now rule on the sufficiency of the evidence before us in the record.

Having found error prejudicial to the appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby affirmed with respect to appellant's first, second, third, and fourth assignments of error, and reversed with respect to appellant's sixth assignment of error, and the matter is remanded for further proceedings in accordance with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

HADLEY, P.J., and THOMAS F. BRYANT, J., concur.