OPINION
Defendant-Appellant, Brian Bolen, appeals a judgment of conviction by the Hancock County Court of Common Pleas, sentencing him to seven years for felonious assault in violation of R.C. 2903.11. For the reasons that follow we affirm the decision of the trial court.
During the early morning of August 28, 1999, Chris Strnad and his friend Courtney Vaive arrived at 712 North Cory Street, Findlay, Ohio after attending a party together. Upon arrival, Strnad joined several people that were conversing on the porch of the residence, and Vaive went inside the house. Among the people on the porch were Chris Autieri, Nick Lambert, Bret Grayson, and Brian Bolen ("Appellant").
While testimony conflicts as to what conversation exactly transpired, apparently a dispute arose between Strnad and Chris Autieri. While Autieri was standing in front of Strnad, Nick Lambert struck Strnad in the face, which was closely followed by similar punches from Autieri. According to the testimony of Bret Grayson, once Strnad collapsed to his knees, all four above-named individuals, including Appellant, began kicking and punching him. Thereafter, Lambert and Appellant threw full beer cans at Strnad from five to six feet away. Autieri eventually broke a beer bottle over Strnad's head and then proceeded to stab him with it several times in the neck and head. Further, there was testimony that Appellant punched and kicked Strnad after Autieri stabbed him.
The attack was eventually broken-up by Courtney Vaive who had returned to the porch after hearing the commotion. She then helped Strnad to the upstairs apartment to assess his wounds and afterwards drove him to the hospital where he received multiple stitches and exploratory surgery. The resulting pain from the injuries lasted several weeks, and Strnad will have long-lasting scarring on his neck and head.
After police investigation, Appellant was arrested on a warrant charging him with one count of felonious assault. Appellant was released from custody upon posting bond. While released on bond, Appellant threatened to physically harm Bret Grayson should he testify against Appellant at trial. On September 21, 1999, Appellant and the three others were indicted by the grand jury.
Appellant's jury trial commenced on May 21, 2001. Prior to Appellant's trial, the three other participants were convicted of felonious assault stemming from the August 28, 1999 attack. On May 24, 2001, the jury returned a verdict of guilty against Appellant for felonious assault in violation of R.C. 2903.11. Thereafter, Appellant was sentenced to seven years in prison. From this judgment Appellant filed this appeal asserting five assignments of error.
 Assignment of Error I
The trial court erred in violation O.R.E. [sic] 403 by admitting into evidence a photographic display which placed the photograph of the defendant next to photographs of individuals already found guilty of the offense for which the defendant was being tried.
Appellant contends that the admission of a photo array including him and the three individuals previously found guilty of the felonious assault violated Evid.R. 403 because the prejudicial nature of the photos outweighed its probative value. Essentially, Appellant argues that the photo display improperly associated him with three felons previously convicted for the assault for which he was currently being tried.
Evid.R. 403(A) provides that "although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice * * *." Trial courts, however, have broad discretion in determining the admissibility of evidence at trial, and unless the trial court has abused its discretion and the defendant has been materially prejudiced thereby, an appellate court may not reverse.[1] An abuse of discretion is defined as a judgment that is unreasonable, arbitrary, or unconscionable; something more than a mere error of law or judgment.[2] In this case, Appellant has failed to demonstrate that he was materially prejudiced by the admission of the photographic display.
The array of photos was utilized by the State during its direct examination of Bret Grayson, who had previously entered a guilty plea for the same offense. During his testimony, Grayson identified Appellant in the courtroom. Then, the State showed Grayson the photographic display, and after laying a proper foundation that Grayson knew the individuals depicted, he testified as to the identity depicted in each photo. Once identified, the photos were utilized as demonstrative evidence to clarify for the jury the actions of each individual during Grayson's testimony of what occurred on the night in question.
A review of the transcript reveals that a proper foundation for the admission of the photo array was established by the State; furthermore, the evidence was useful to the jury since the crime was multi-faceted and included multiple actors. Thus, for the purpose of clarifying the actions committed by several actors, the evidence was probative. Moreover, all three of the co-participants who are depicted in the photo display and who were previously convicted for the attack, testified during Appellant's trial. Two of them were called as defense witnesses. Therefore, we find no merit to Appellant's claim that the photos essentially led to his guilt by association and were thus prejudicial.
For these reasons, the trial court did not abuse its discretion by allowing the admission of the photographic array because the evidence was probative and Appellant was not materially prejudiced by its admission. Consequently, Appellant's first assignment of error is without merit and is hereby overruled.
 Assignment of Error II The verdict of guilt was both against the manifest weight of the evidence and also should be rejected as a matter of law.
Appellant maintains that the verdict of guilt was based upon insufficient evidence and, in the alternative, was against the manifest weight of the evidence. Since sufficiency and weight are two distinct legal concepts,[3] we must address each argument separately.
We will first discuss Appellant's assertion that the evidence was insufficient to find him guilty beyond a reasonable doubt. When reviewing a claim of insufficient evidence, an appellate court is bound to examine all the evidence admitted at trial, in a light most favorable to the state, and then determine whether any rational trier of fact could have found all the essential elements of the charge proved beyond a reasonable doubt.[4]
The statutory elements of felonious assault are that "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *."[5]
Appellant contends that the evidence presented at trial was insufficient to prove that he knowingly caused harm to the victim; however, we disagree.
Two of the State's witnesses testified to Appellant's participation in the assault. Bret Grayson, who also participated in the attack, testified that Appellant kicked Strnad two or three times once he had fallen to his knees from being punched several times in the face by two of the other assailants. Furthermore, he testified that Appellant threw full beer cans from five to six feet away at Strnad, and the cans hit him, as he was lying injured on the ground. Grayson also testified that none of the men involved, including Appellant, attempted to assist Strnad or stop the attack.
The State also presented testimony from Courtney Vaive, who testified as to Appellant's involvement in the assault. Vaive was inside the residence when the attack began but was able to testify to the part she witnessed. Testimony indicated that she saw Appellant punch Strnad in the jaw and also in the stomach area. Moreover, Vaive testified that after the stabbing she witnessed Appellant kick Strnad in the stomach and the head. Like Grayson's testimony, Vaive corroborated that none of the assailants attempted to assist Strnad or prevent the escalation of the attack. Additionally, from her recollection of events, Vaive was able to identify Appellant by describing his clothing on the night in question and that he has a tattoo on his arm.
The testimony of these two witnesses established that Appellant participated in the offense. The evidence presented was such that a rational trier of fact could have concluded that Appellant had taken actions constituting the intent necessary for the commission of the charged offense and that he had the requisite intent to aid in the attack beyond a reasonable doubt. For these reasons, we find that sufficient evidence was presented to find Appellant guilty of felonious assault.
We now turn to discuss Appellant's contention that the jury verdict was against the manifest weight of the evidence. The standard to apply when reviewing such a claim has been set forth as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.[6]
 Furthermore, an appellate court should grant a new trial only in an exceptional case "where the evidence weighs heavily against the conviction."[7] This is not such a case. A complete review of the record here does not lead this court to conclude that the jury clearly lost its way in rendering a guilty verdict.
Consequently, Appellant's second assignment of error is not well taken and is overruled.
 Assignment of Error III Defendant's counsel provided ineffective assistance throughout the trial through mishandling of evidentiary proffers and through not objecting to the admission of testimony more prejudicial than probative.
Appellant claims in his third assignment of error that his counsel was ineffective because he failed to object to prejudicial testimony. For the following reasons, we disagree.
The Sixth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, guarantees criminal defendants the right to the effective assistance of counsel.[8] There is a two-prong test to determine whether counsel was ineffective. First, we must determine whether counsel's performance fell below an objective standard of reasonable representation, and, if so, we must then determine whether Appellant was prejudiced by counsel's performance.[9]
In order to show that a defendant has been prejudiced by ineffective assistance of counsel, the Appellant must establish that there "exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."[10]
In reviewing a claim of ineffective assistance of counsel, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[11] Moreover, "[a] properly licensed attorney in Ohio is presumed competent."[12] Therefore, the defendant carries the burden of proving ineffectiveness.[13]
Appellant asserts that his trial counsel acted in a manner substantially below what is expected of competent counsel by failing to object to testimony by Bret Grayson, which indicated that Appellant had threatened him in hopes that he would not testify at Appellant's trial. While counsel did not object, Appellant presented testimony from an eyewitness to the confrontation to rebut Grayson's assertion. This witness contradicted Grayson's prior testimony concerning the alleged intimidation by Appellant. Therefore, although Appellant's trial counsel may have failed to object to arguably prejudicial testimony, this decision was within the realm of trial tactics. By providing the jury with contradicting testimony, defense counsel was able to attack the credibility of one of the State's key witnesses while simultaneously precluding a heightened suspicion of the jury by objecting during the State's direct examination. It is clear that "[d]ebatable trial tactics do not constitute ineffective assistance of counsel."[14] Furthermore, Appellant has not sustained his burden that there exists a reasonable probability that the result of the trial would have been different were it not for this alleged error.
Appellant also maintains that his counsel failed to object to Courtney Vaive's description of Strnad after the assault occurred, which he claims was highly prejudicial. During her testimony, Vaive revealed that while cleaning the blood from Strnad's chest she noticed pieces of fatty tissue from the lacerations on his neck. While this sort of statement might be characterized as an attempt to inflame the passions of the jury, Appellant fails to demonstrate that without this statement the result of the trial would have been different. This is especially true in light of the fact that the crux of Appellant's defense is that he did not participate in the attack, not that an assault and resulting injury did not occur.
For these reasons, Appellant's third assignment of error is without merit and is overruled.
 Assignment of Error IV The court erred in not holding an in camera inspection of officer Pringle's supplemental police report as mandated by C.R. [sic] 16(B)(1)(g).
 In his fourth assignment of error, Appellant asserts that the trial court erred by not conducting an in camera inspection of two police officers' written reports as mandated by Crim.R. 16(B)(1)(g). After a thorough review of the record, we find that Appellant's assertion is without merit.
Crim.R. 16(B)(1)(g) states the following:
 Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
 If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.
 If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.
At trial, the State's first witness was Officer Brian Miller of the Findlay, Ohio Police Department. During the State's direct examination of Officer Miller, Appellant objected to the officer's use of a previously written police report to refresh his memory of what transpired on the night in question and moved the court for an in camera review of the report pursuant to Crim.R. 16(B)(1)(g) in order to evaluate whether the document contained exculpatory evidence. The trial court properly ruled that according to Crim.R. 16, a motion for an in camera review only pertains to potential inconsistent statements and not exculpatory statements; furthermore, the trial court admonished Appellant that if he wanted an inspection of the document for inconsistent statements an inspection would be afforded to him upon a proper and timely Crim.R. 16 motion after the close of direct examination.
Thereafter, Appellant failed to make a Crim.R. 16 motion until after Officer Miller had been excused from the courtroom. The Ohio Supreme Court has repeatedly held that a Crim.R.16(B)(1)(g) motion "can be made at any time after completion of the witness' direct examination, but prior to the completion of the witness' cross-examination."[15]
Moreover, even if Appellant's motion had been timely asserted, he made clear to the court that his concern was for possible exculpatory remarks in the police report and not potential inconsistent statements. Crim.R. 16(B)(1)(g) does not address exculpatory material, and therefore, Appellant's contention is misplaced. Despite Appellant's mistaken assertion that he was entitled to have his motion granted, the trial court did entertain Appellant's request by reviewing the report but found no exculpatory or inconsistent statements. Therefore, no error was committed by the trial court.
A similar situation arose during the testimony of another State witness, Officer Craig Pingle of the Findlay Police Department. In this instance, Appellant again moved the court for an in camera inspection of the officer's previously written police report to evaluate it for potential exculpatory statements. While making his argument before the trial court in support of his Crim.R. 16(B)(1)(g) motion, Appellant clearly stated that his purpose was for the trial court to conduct an incamera review of Officer Pingle's report to evaluate whether exculpatory statements were contained therein. As stated above, Crim.R. 16(B)(1)(g) does not pertain to exculpatory statements; therefore, the trial court did not err by overruling Appellant's motion.
Consequently, Appellant's fourth assignment of error is overruled.
 Assignment of Error V Assuming for purposes of argument the harmlessness of the above listed errors, these errors constitute cumulative error such that the defendant was deprived of a fair trial.
In his final assignment of error, Appellant asserts that the cumulative effect of all the errors he has presented violated his right to a fair trial. Errors that are separately harmless may, when considered together, violate a person's right to a fair trial.[16] However, "in order to consider whether `cumulative' error is present, we would first have to find that multiple errors were committed in this case."[17]
Because we have not found multiple errors in this case, there is no cumulative error present. Therefore, Appellant's fifth assignment of error is overruled.
Having found no error prejudicial to Appellant herein, in the particulars assigned and argued, the judgment of the trial court is affirmed.
Judgment affirmed.
SHAW, P.J., and BRYANT, J., concur.
[1] State v. Hymore (1967), 9 Ohio St.2d 122, 128, certiorari denied(1968), 390 U.S. 1024; State v. Maurer (1984), 15 Ohio St.3d 239, 266;State v. Wooten (July 23, 1997), Shelby App. No. 17-96-23, unreported.
[2] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[3] State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus.
[4] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of thesyllabus, superseded by state constitutional amendment on other groundsin State v. Smith (l997), 80 Ohio St.3d 89.
[5] R.C. 2903.11(A)(1).
[6] State v. Martin (1983), 20 Ohio App.3d 172, 175; Thompkins,78 Ohio St.3d at 387.
[7] Id.
[8] State v. Johnson (1986), 24 Ohio St.3d 87, 99.
[9] State v. Bradley (1989), 42 Ohio St.3d 136, 142.
[10] Id. at paragraph three of the syllabus; State v. Noggle (2000),140 Ohio App.3d 733, 747.
[11] State v. Robinson (1996), 108 Ohio App.3d 428, 431, quotingStrickland v. Washington (1984), 466 U.S. 668, 689.
[12] State v. Smith (1985), 17 Ohio St.3d 98, 100, citing Vaughn v.Maxwell (1965), 2 Ohio St.2d 299, 301.
[13] Id.
[14] State v. McNeill (1998), 83 Ohio St.3d 438, 449, citing State v.Clayton (1980), 62 Ohio St.2d 45, 49.
[15] State v. Schnipper (1986), 22 Ohio St.3d 158, 159-60. See, also,State v. Ellis (1975), 46 Ohio App.2d 102, 105; State v. Wilson (1985),23 Ohio App.3d 111, 114.
[16] State v. DeMarco (1987), 31 Ohio St.3d 191, paragraph twoof the syllabus; State v. Madrigal (2000), 87 Ohio St.3d 378, 397.
[17] Madrigal, 87 Ohio St.3d at 398.