OPINION
{¶ 1} Defendant-appellant, Antonio L. Holman, appeals from the September 17, 2002 judgment entry of the Franklin County Court of Common Pleas, finding Holman guilty of felonious assault and sentencing him to four years incarceration. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} On December 18, 2001, Holman was indicted on one count of attempted murder and one count of felonious assault. Trial commenced on July 15, 2002, in which appellant testified in his own defense. The following facts are taken from testimony presented at trial.
 {¶ 3} On September 4, 2001, Holman and David W. Husband, Jr., were walking on a sidewalk in front of an apartment complex driveway. Husband dropped his keys in the driveway. At that same time, Ellis Gregg and his wife, Robin Gregg, were pulling into the driveway in order to pay a water bill at Lynn Suber's residence. Suber was the Resident Manager of the apartment complex. Gregg stopped his truck to allow Husband to retrieve his keys. After Husband picked up his keys, Gregg proceeded to pull into the lot. Gregg testified that Husband asked, "What are you looking at, bitch?" (Tr. 21.)
 {¶ 4} After Gregg parked his car, he got out of his vehicle, and as he was proceeding to remove his shirt and shoes, he asked Husband what he said, and Husband replied, "What are you dissing me for?" (Tr. 21.) Gregg testified that since he was entering Suber's apartment, he was removing his shirt and shoes because they had tar on them. Id.
 {¶ 5} Husband approached Gregg and proceeded to shout expletives at him. Gregg told Husband and Holman to leave him alone, but both Holman and Husband followed Gregg back to his car. Gregg testified that "I think I told my wife — which I didn't even own a gun at the time — I said, `Why don't you run over and get my gun?'" (Tr. 24.)
 {¶ 6} Gregg thought that by making this remark, Holman and Husband would be smart enough to walk away. (Tr. 57.) However, Husband continued to yell at Gregg and Gregg testified that he heard Holman say, "we need to take care of this problem" as he proceeded to take off around the house. (Tr. 58.) Gregg admitted to telling Husband, "I'm going to beat your ass and I'm going to beat your friend's ass too." (Tr. 51.) Gregg testified that Holman returned from behind the building "in full force, hit me in the head with a rock * * *." (Tr. 25.)
 {¶ 7} Gregg testified that he stayed in the hospital eight to nine days and that his ribs and head were black and blue, his face, arms, and ears were bruised, and he had to undergo surgery for blood clots on the protective layer of his brain. (Tr. 25, 26.)
 {¶ 8} Holman took the stand and recounted a different series of events. He testified that after Husband made his remark to Gregg, Gregg "pulled in the driveway real quick and came to a stop * * * and jumped out. And when he was running out, he jumped out and started to run around the truck and said, `I know how to deal with you punks. Honey get the gun.'" (Tr. 205.) Holman testified that he never saw a gun, nor was a gun ever pointed at him. (Tr. 206.) Holman stated that he was sitting on a car at the time Gregg and Husband confronted each other. Holman testified that at one point Gregg went to his truck and reached in. Holman testified that he thought that Gregg was going to pull out a weapon. (Tr. 208.) However, Gregg did not take anything out of his truck and proceeded to yell at Husband.
 {¶ 9} The two men engaged in verbal confrontation for about five to eight minutes. During the time of the confrontation, Suber pulled into the driveway. She testified that all three men were on her porch steps having a discussion, arguing. (Tr. 181.) Suber testified that she knows Holman because she is a best friend to Holman's mother. Suber testified that during the arguing, Holman handed her some keys to his mother's van, and she proceeded to walk into the house. Id.
 {¶ 10} Holman testified that he told Husband, "if you're going to fight him, fight him or let's go." (Tr. 212.) According to Holman, Husband said to Gregg, "man, I don't even want to fight you, so why don't you take your old ass in the house." (Tr. 212.) Holman testified that Gregg responded to Husband saying, "screw, you. I'm going to beat your ass and when I'm done with you, I'm going to whip his." (Tr. 213.) Holman responded to Gregg stating, "I don't play nice." (Tr. 213.) At that point, Holman testified that he went around the building and got a rock. Holman testified that at the time he went to retrieve the rock he was very angry and mad. (Tr. 214.)
 {¶ 11} Holman testified that when he heard Gregg make that comment about beating him up, he felt threatened and upset. Holman testified that he once felt that way when he was a younger boy and witnessed his mother being smacked around and was not able to do anything about it. (Tr. 213-214.) Holman was not physically afraid of Gregg, but he was physically afraid for Husband. (Tr. 233, 234, 235.) Holman stated that he felt he had to do something in this instance to protect his "little friend" who was about 5'7", 135 to 140 pounds, from Gregg who was the adult. Holman "felt like [he] could do something about that, maybe make [Gregg] shut up and leave [Holman and Husband] alone." (Tr. 214.) Holman hit Gregg, but he was unable to say if he hit Gregg with the rock or not because in his mind, he thought he dropped the rock. (Tr. 217.) Holman recalled kicking Gregg one time while Gregg was lying on the ground, but testified that it was possible that he could have kicked him more than once. (Tr. 219.) On cross-examination, Holman testified that Gregg did not punch him, kick him, or charge at him. (Tr. 232.)
 {¶ 12} At the end of closing argument, counsel for Holman asked the jury to return a verdict on the lesser offense of aggravated assault. During discussion with the trial judge, Holman's counsel requested that the court instruct the jury on the standard OJI instruction without modification. (Tr. 294.) The trial judge instructed counsel that he would modify the OJI with respect to the mitigating factor as set forth in State v. Shane (1992), 63 Ohio St.3d 630. After the trial judge charged the jury, Holman's counsel objected to the trial court's use of the language in Shane.
 {¶ 13} On July 17, 2002, the jury found Holman guilty of felonious assault and not guilty of attempted murder. On September 11, 2002, the trial court sentenced Holman to four years incarceration and ordered him to pay $267.68 in reparation to the Attorney General, Ohio Crime Victims Reparation Fund. It is from the journalized September 17, 2002 entry that Holman appeals, assigning the following as error:
 {¶ 14} "The trial court erred by incorrectly instructing the jury on the elements of the offense of aggravated assault, thereby denying the appellant his right to a fair trial as guaranteed to him by theFourteenth Amendment to the United States Constitution."
 {¶ 15} When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case. State v. Wolons (1989), 44 Ohio St.3d 64, 68. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 16} When examining a trial court's jury instructions, "`a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" State v. Madrigal (2000), 87 Ohio St.3d 378, 396, quoting Cupp v. Naughten (1973), 414 U.S. 141, 146-147, 94 S.Ct. 396, 400; State v. Price (1979), 60 Ohio St.2d 136, paragraph four of the syllabus; see, also, State v. Lewis (1993), 67 Ohio St.3d 200, 203. Thus, we must consider the jury instructions "as a whole" and then determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights. Becker v. Lake Cty. Mem. Hosp. West (1990),53 Ohio St.3d 202, 208; see, also, State v. Noggle (2000),140 Ohio App.3d 733, 750.
 {¶ 17} Holman contends that the trial court's instruction on the offense of aggravated assault was contrary to the Shane decision. The trial court stated that, "words alone without more will not constitute reasonably sufficient provocation to incite the use of deadly force." (Tr. 310.) Shane, at 637, in determining whether sufficient evidence was presented to constitute sufficient provocation, noted:
 {¶ 18} "[W]ords alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations."
 {¶ 19} Holman argues that "the trial court's instruction, in effect, amounted to an [sic] directive to the jury that the [sic] there was not sufficient evidence to warrant a finding on behalf of the appellant with respect to the lesser offense. The particular portion of the trial court's instruction, in effect, amounted to a de facto refusal on the part of the Court to give an instruction on the lesser offense at all." (Appellant's brief, at 14.)
 {¶ 20} Aggravated assault is defined as felonious assault committed by a defendant who acts:
 {¶ 21} "[U]nder the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force[.]" R.C. 2903.12(A).
 {¶ 22} In State v. Deem (1988), 40 Ohio St.3d 205, the Ohio Supreme Court explained that an instruction on aggravated assault is only required "where the defendant presents sufficient evidence of serious provocation." Id. at paragraph four of the syllabus.
 {¶ 23} As noted by the state, however, the presentation of only "some evidence" of provocation by Holman is not sufficient to warrant the giving of such an instruction. In Shane, at 633, the Ohio Supreme Court explained:
 {¶ 24} "To require an instruction to be given to the jury every time `some evidence,' however minute, is presented going to a lesser included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser included (or inferior-degree) offense."
 {¶ 25} Under the circumstances of this case, Holman was not prejudiced by the instruction given by the trial court because the evidence adduced at trial did not require it to be given. The facts indicate that, prior to the incident in question, Holman stood by watching as Gregg and Husband confronted one another. Holman was not involved in the arguing back and forth. Holman testified that when Gregg said he was going to beat him and Husband up, Holman felt "a little threatened" and he was "a little upset." (Tr. 213.) However, Holman later revealed in his testimony that he did not feel threatened by Gregg, but he was more so concerned about Husband's safety due to his size. (Tr. 233, 234, 235.) Holman testified that he had to do something to protect his "little friend." Holman told Gregg, "leave my little friend alone before you deal with somebody bigger." (Tr. 220.) Holman then went to retrieve a rock. At that time, Holman testified to feeling angry and "really, really mad." (Tr. 214.)
 {¶ 26} In Deem, the court explained that:
 {¶ 27} "`Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time.'" Id. at 211, citing State v. Mabry (1982), 5 Ohio App.3d 13, paragraph five of the syllabus.
 {¶ 28} In this instance, the only evidence presented at trial of provocation of Holman by Gregg was Gregg's statement to his wife to get the gun, and Gregg stating to Holman that he was going to beat him up. Neither of these statements were reasonably sufficient, as a matter of law, to incite or arouse Holman into hitting Gregg over the head with a rock, particularly given the time for reflection between the statements and the hitting. Thus, even though aggravated assault is an offense of inferior degree to the indicted crime, an instruction thereon was not supported by the evidence presented in this case, and was properly refused.
 {¶ 29} Having fully reviewed the testimony, and having considered the mental and emotional state of Holman under the circumstance, we find, as a matter of law, that Holman failed to present sufficient evidence that he acted under sudden passion or in a fit of rage sufficient to incite him into using deadly force against Gregg. See State v. Murphy (Aug. 11, 1998), Franklin App. No. 97APA10-1357. Holman had ample time to reflect upon his course of action between the time Husband and Gregg confronted each other and the time Holman hit Gregg on the head with the rock. Therefore, any alleged error in the jury instruction given was not prejudicial to appellant and, as such, Holman's sole assignment of error is not well-taken and is overruled.
 {¶ 30} Based on the foregoing, Holman's sole assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
PETREE, P.J., and BRYANT, J., concur.