[Cite as *State v. Trusty*, 2013-Ohio-3548.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                          :          APPEAL NOS: C-120378
                                                                     C-120386
    Plaintiff-Appellee,          :          TRIAL NO. B-1105783

  vs.                                            :

JAMES M. TRUSTY,                       :          *O P I N I O N.*

    Defendant-Appellant.       :


Criminal Appeals From:  Hamilton County Court of Common Pleas

Judgment Appealed from is:  Affirmed

Date of Judgment Entry on Appeal:  August 16, 2013


*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Philip R. Cummings,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Joshua L. Goode,* for Defendant-Appellant.



Please note:  this case has been removed from the accelerated calendar.

**CUNNINGHAM, Presiding Judge.**

{¶1}     Defendant-appellant James M. Trusty appeals from the judgment of the Hamilton County Court of Common Pleas convicting him, after a jury trial, of gross sexual imposition.

{¶2}     Trusty argues that the trial court erred by allowing the investigating detective to testify to his silence during the investigation, in violation of the Fifth Amendment, and by allowing hearsay evidence of the child victim's allegations, thereby bolstering the credibility of her testimony, which was not corroborated by any physical evidence.   And Trusty contends that he was denied the effective assistance of trial counsel because counsel failed to object to this evidence.   Trusty further asserts that his conviction was not supported by sufficient evidence, or that it was against the manifest weight of the evidence, when only the admissible evidence is considered.

{¶3}     Because the child victim's testimony was not significantly impeached at trial, the record lacks evidence to support a motive for fabrication of her allegation, the detective's reference to Trusty's pre-arrest silence was limited, the hearsay evidence was cumulative to what the jury heard from the victim, counsel's failure to object was likely trial strategy, and the victim's testimony was more than sufficient to establish all the elements of the offense, we hold that Trusty has not demonstrated that the errors at trial affected his substantial rights.   In the absence of the prejudice required for a new trial, we affirm Trusty's conviction.

## I.  Background Facts

{¶4}     In the summer of 2009, 11-year-old M.G. and her parents lived on the same street as her Aunt Cathy; Cathy's former husband, defendant Trusty; and the

2

couple's daughter Hollie, who was M.G.'s cousin and close friend. M.G.'s grandmother also lived on the street.

{¶5} M.G. often spent the night at Hollie's house in Hollie's room. On one morning, while Hollie slept, she got up to see if her aunt or uncle was awake. M.G. did not see her aunt, but Trusty was awake and asked her to watch TV with him in his bed in his bedroom, as she had done in the past without incident. But on this particular day, when M.G. watched T.V. with Trusty, he grabbed her hand and pushed it down his shorts and boxers so that her hand touched his penis. After 30 seconds, M.G. moved her hand away, and immediately left the house and went to her grandmother's house. At trial, M.G. described clearly and credibly the events of that morning.

{¶6} M.G., however, did not tell anyone about the incident for two years. In August 2011, while on a church youth group retreat in Chicago, M.G. participated in an activity that involved writing a private letter about something that she was "scared of." M.G. wrote about that morning in the summer of 2009 when Trusty forced her to touch him inappropriately. She then shared the letter with Melissa Graham, the youth pastor on the retreat.

{¶7} Graham contacted 241-KIDS as required by law when such an allegation is made. After returning from Chicago, she accompanied M.G. and her parents to the Norwood Police Department, where they filed a police report. Detective Jeff Kilby of the Norwood Police Department was assigned to investigate.

{¶8} Trusty was later indicted on a charge of gross sexual imposition. At trial, M.G. explained that she had not disclosed the allegations about her uncle until after she wrote the letter at the Chicago retreat. She read the jury her letter, which was marked as state's exhibit 1 and later admitted into evidence.

{¶9}   M.G. further testified that Trusty had not attempted any improper contact after the incident, but that she had felt uncomfortable around him. She stopped spending time with him after he was divorced from her Aunt Cathy in 2010, although she was not involved in the divorce and she missed seeing Trusty. She remained friends with her cousin, even though she was afraid that her cousin would end their friendship if she told her what Trusty had done to her.

{¶10}   On cross-examination, defense counsel elicited from M.G. an admission that she could not remember some details of the day in question, such as the date, the color of Trusty's shorts, or what she had been watching when the touching occurred. M.G. also admitted that she had not avoided her uncle after the incident, that she had returned to spend the night at her cousin's house, while Trusty was there, on numerous occasions, and that she did not fear him as a result of the incident. But M.G. never waivered from her claim that on one warm morning, during the summer when she was 11 years old, Trusty had made her touch his penis for 30 seconds while she sat next to him on his bed and watched T.V.

{¶11}   The state presented two other witnesses at Trusty's trial, Graham and Detective Kilby. Graham testified that M.G. had cried after giving her the letter on the Chicago retreat and that M.G. appeared relieved after sharing the contents of the letter with her. She also stated that after learning of the contents of the letter, she contacted the authorities and encouraged M.G. to tell her parents.

{¶12}   Detective Kilby testified that he had begun an investigation based on the police report filed by M.G. and her parents after the Chicago trip. He told the jury that he had contacted Trusty and had requested to interview him, but that he was later notified by an attorney that the attorney had been hired to represent Trusty and that Trusty had expressly invoked his constitutional right to remain silent.

{¶13}   Defense counsel did not object to this testimony. On cross-examination, counsel elicited from Detective Kilby testimony that Trusty had cooperated with law enforcement.

{¶14}   Both Graham and Kilby testified to some extent, without any objection, as to statements previously made by M.G., in which she described the incident with Trusty. To that end, Graham's testimony was limited to conveying to the jury that M.G. had alleged that her uncle had abused her two years earlier and that she had discussed M.G.'s letter with M.G. Detective Kilby did not repeat for the jury M.G.'s statement to him about the allegations. Instead, he testified that he was given the letter during his investigation and that the contents of M.G.'s letter accurately reflected M.G.'s statements to him during his interview of her.

{¶15}   At trial, Trusty sought to establish through the cross-examination of the state's witnesses that M.G. had fabricated the allegations in response to the divorce between Trusty and M.G.'s aunt. The divorce had occurred a year after the improper touching and a year before the church retreat where M.G. had disclosed the allegations. Despite counsel's questioning, Trusty was not able to establish that the divorce was acrimonious or that M.G. had been involved in the divorce proceedings. Trusty did not testify or present any witnesses.

{¶16}   In closing argument, defense counsel argued that the state had failed to meet its burden of proof beyond a reasonable doubt, claiming that M.G.'s testimony was too lacking in detail and that her allegation contradicted common sense because she continued to spend time with Trusty after the alleged abuse. Counsel also argued that the state had not presented any evidence to corroborate M.G.'s testimony. In rebuttal argument, the state asserted that the letter was a "piece of evidence" that jurors could consider in finding Trusty guilty of the offense.

{¶17}   Subsequently, the jury found Trusty guilty of gross sexual imposition.

## II. Violation of  Privilege Against Self-Incrimination

{¶18}   In his first assignment of error, Trusty argues that the trial court erred when it allowed his pre-arrest invocation of his right to remain silent to be used as substantive evidence of guilt, in violation of his Fifth Amendment privilege against self-incrimination.   The state argues that Detective Kilby's testimony was permissible because it explained the course of his investigation.

{¶19}   Trusty argues that the following testimony by Detective Kilby during the state's case-in-chief was improper:

Prosecutor:  Now, Officer, once you had talked to the victim and her family and Ms. Martin about this incident and done your investigation, what did you do next?

Detective Kilby: I attempted to speak to the defendant about [the allegations]. I called him and requested an interview and *then I received a notification on the 31st of August from Mr. Fox that he was going to represent the defendant and that he was going to exercise his constitutional right to remain silent.* From there, I filed a letter with the prosecutor's office requesting a direct indictment regarding this matter.

(Emphasis added.)

{¶20}   Trusty claims that the prosecutor continued to explore his exercise of his right to remain silent with the following line of questioning:

Prosecutor:  Okay.  And so you have never talked to the defendant in regards to this case?

Detective Kilby:  I left him a message.  He left me a message.

Prosecutor: And you don't know of any statements that he's made to anyone else as far as that's concerned?

Detective Kilby: I understand that he's had a conversation with his daughter.

Prosecutor: But you don't know any of that?

Detective Kilby: I don't know.

{¶21} The Ohio Supreme Court has held that when a defendant has invoked his Fifth Amendment privilege against self-incrimination during pre-arrest questioning by expressing a desire to remain silent or to speak to an attorney, the use of the defendant's pre-arrest silence as substantive evidence of guilt violates the Fifth Amendment privilege. *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, following *Combs v. Coyle*, 205 F.3d 269 (6th Cir.2000).[1]

{¶22} In *Leach*, two young women called the police and accused the defendant of crimes including rape. *Id.* at ¶ 3. The defendant had initially agreed to speak with the police about the allegations, but he failed to keep the appointment. Instead, the defendant left a message on an officer's answering machine stating that he wanted to speak to an attorney before talking with the police.

{¶23} During opening statement at Leach's trial, the prosecutor referenced that Leach had failed to keep his appointment and that he had instead stated that he wanted to speak to an attorney. On direct examination, the police investigator testified about his numerous calls to the defendant, that the defendant had not kept his appointment to speak with the police, and that the defendant " 'wanted to speak

---

[1] The United States Supreme Court recently granted certiorari to resolve a division of authority in the lower courts over whether the prosecution may use a defendant's assertion of the privilege against self-incrimination during a noncustodial police interview as part of its case in chief. But the court, in a plurality decision authored by Justice Alito, found it unnecessary to reach that question because the petitioner did not invoke the privilege during his interview. *Salinas v. Texas*, ___U.S.___, 133 S.Ct. 2174, 186 L.Ed.2d 376, 81 U.S.L.W. 4467 (2013).

with an attorney before talking with the police.' " *Id.* at ¶ 5. The court held that the references to Leach's request for an attorney resulted in the use of Leach's pre-arrest silence as substantive evidence of guilt, in violation of the Fifth Amendment.

{¶24} In this case, we arrive at the same conclusion, and we hold that the state's use of Trusty's pre-arrest silence as substantive evidence of guilt violated the Fifth Amendment. In doing so, we reject the state's argument that Detective Kilby's comment on Trusty's pre-arrest assertion of his Fifth Amendment privilege was permissible because it was only offered to explain the course of Detective Kilby's investigation. The *Leach* court rejected a similar argument because this type of information does not explain the course of the investigation. *Id.* at ¶ 32. Instead, the testimony by Detective Kilby allowed the jury to infer Trusty's guilt from his express invocation of his Fifth Amendment privilege before his arrest.

{¶25} A violation of a defendant's right against self-incrimination is subject to harmless-error analysis. *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 162. Accordingly, we must review the impact of Detective Kilby's testimony in this case.

### A. Plain Error

{¶26} Although we hold that the admission of Detective Kilby's testimony concerning Trusty's invocation of his Fifth Amendment privilege was error, the record reflects that Trusty did not object to this testimony. As a result, we apply the plain error standard referenced in Crim.R. 52(B).

{¶27} To have plain error under Crim.R. 52(B), there must be an error that constitutes an "obvious" defect in the trial proceedings and that affects the defendant's "substantial rights." *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

{¶28}   The issue in this case is whether the clear error affected Trusty's substantial rights.   We may reverse under a plain-error standard only where the defendant can demonstrate that "but for the error, the outcome of the trial clearly would have been otherwise."  *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus.   "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."  *Id.* at paragraph three of the syllabus.

{¶29}   Trusty argues that he was prejudiced by the state's use of his pre-arrest silence in its case-in-chief because the state's case turned on the credibility of the alleged victim, and it was not based on any physical corroborating evidence.   He contends that the facts of this case are similar to those in *Leach*, where the Ohio Supreme Court upheld this court's reversal of the defendant's convictions for attempted rape, gross sexual imposition, and kidnapping based in part on the state's use of his pre-arrest silence as substantive evidence of guilt, even though Leach had failed to object to the admission of that evidence.

{¶30}   But the Ohio Supreme Court affirmed this court in *Leach,* and we held that Leach had failed to demonstrate that the state's use of his pre-arrest silence rose to the level of plain error.  *State v. Leach*, 150 Ohio App.3d 567, 2002-Ohio-6654, 782 N.E.2d 631, ¶ 43 (1st Dist.).  We reversed his convictions after finding that the cumulative effect of several errors denied him a fair trial.  *Id.* at ¶ 58.

{¶31}   The other errors we recognized included the state's use of Leach's post-arrest silence as substantive evidence of guilt, the admission of the *Miranda* waiver form, and the admission of lay opinion testimony placing Leach at the scene where two female teenagers claimed the wrongful conduct had occurred.   Importantly, we also recognized that there was some evidence to support Leach's

theory that the complaining witnesses had fabricated the allegations to avoid consequences for staying overnight and having parties at a friend's house while the friend and her family were out of town. *Id.* at ¶ 45.

{¶32} Ultimately, under those circumstances, the testimony of the state's witnesses, without any physical evidence, did not demonstrate the overwhelming evidence that was needed for the court to avoid giving reversible weight to the cumulative errors, as we could not say that there was no reasonable probability that the erroneously admitted evidence, when considered as a whole, had contributed to Leach's conviction. *Id.* at ¶ 58.

### B. Plain Error Not Demonstrated

{¶33} We decline to find plain error in this case based on the erroneous admission of Detective Kilby's reference to Trusty's pre-arrest silence.

{¶34} First, the reference occurred only during Detective Kilby's testimony, without magnification of the error by the prosecutor through a reference to it in opening statement or closing argument. Importantly, the record does not reflect that the prosecutor had planned to elicit the improper testimony as a part of her trial strategy. *See State v. Young*, 5 Ohio St.3d 221, 450 N.E.2d 1143 (1983), paragraph three of the syllabus.

{¶35} Second, Detective Kilby only referenced Trusty's invocation of his privilege, he did not characterize Trusty's conduct as a way for Trusty to avoid "incriminat[ing] himself." *Compare State v. Whitaker*, 4th Dist. Scioto No. 07CA3168, 2008-Ohio-4149, ¶ 34 (finding plain error where the trial court failed to issue a corrective instruction after the investigating officer testified that the defendant had affirmatively asserted his right to silence out of a fear of incriminating himself, and the record did not contain overwhelming evidence of guilt).

10

{¶36}   Third, as discussed more fully under the third assignment of error, defense counsel likely chose not to object to avoid drawing attention to the comment. Plain error ordinarily cannot be used to negate the effect of a tactical decision. *See, e.g., State v. Claytor*, 61 Ohio St.3d 234, 240, 574 N.E.2d 472 (1991) (stating that "what appears to have been a tactical decision * * * cannot now be converted into judicial error."); *State v. Clayton*, 62 Ohio St.2d 45, 46-47, 402 N.E.2d 1189 (1980); *State v. Noggle*, 140 Ohio App.3d 733, 746, 749 N.E.2d 309 (3d Dist.2000). Moreover, counsel diminished the prejudice by quickly eliciting from Detective Kilby on cross-examination that Trusty had cooperated with the police.

{¶37}   Finally, M.G. never equivocated from her testimony that during the summer of her 11th year, her uncle had put her hand down his pants and on his penis, even after defense counsel thoroughly cross-examined her.  Trusty argues that M.G. was not believable because she could not remember details such as the color of Trusty's shorts or the show she had been watching when the touching occurred.  But we disagree with Trusty that M.G.'s inability to remember that type of detail four years after the event diminished her credibility.

{¶38}   Trusty also contends that she contradicted herself with respect to the amount of time that she had sat with Trusty in his bed before the touching occurred. The transcript reflects that M.G., on direct examination, stated that she had been on Trusty's bed for "a few hours" before the inappropriate touching occurred.  But when asked about the time frame on cross-examination, she said that the touching had occurred shortly after she sat on the bed.  We cannot say however, that M.G.'s testimony was contradictory based on this example.  Instead, her answer on direct examination may not have been clearly articulated.  On cross-examination, defense counsel stated, "I didn't exactly hear you before, but did you say that you sat in there

for a couple hours before this occurred?" M.G. replied, "No." She then stated that the touching occurred shortly after she sat on Trusty's bed.

{¶39} Further, the record lacks any support for Trusty's theory that M.G. fabricated the allegations in response to the termination of his marriage to her aunt. The testimony at trial demonstrated only that M.G. was not involved in the divorce, that her Aunt Cathy had remarried, and that M.G. missed her uncle. Any animosity towards Trusty displayed by M.G.'s family in the courtroom most likely stemmed from the allegations involved at trial, and not from the divorce.

{¶40} Because Trusty has failed to demonstrate that the result of his trial would have been different absent the erroneous admission of evidence of his pre-arrest silence during the state's case-in-chief, and that a reversal is necessary to avoid a manifest miscarriage of justice, we overrule the first assignment of error. *Long*, 53 Ohio St.2d 91, 372 N.E.2d 804, paragraphs two and three of the syllabus.

### III.  Admission of Hearsay Evidence

{¶41} In his second assignment of error, Trusty argues that the trial court erred by admitting inadmissible hearsay evidence that included the contents of M.G.'s letter and her prior statements to Graham and Detective Kilby about Trusty's improper conduct. According to Trusty, the state repeatedly used M.G.'s prior statements, which were consistent with her trial testimony, to improperly bolster her testimony in this case.

{¶42} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is inadmissible unless it falls within a limited number of exceptions.

{¶43}  The state first contends that the challenged evidence was not offered for the truth, but to explain the setting of the case and to show why the witnesses took the actions they did.  According to the state, Graham's testimony explained why Graham took the matter to the police.  Detective Kilby's testimony regarding the allegations explained why he filed charges against Trusty for the offense of gross sexual imposition.  *See State v. Thomas*, 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980).

{¶44}  Although the record reflects that the state offered Graham's and Detective Kilby's testimony concerning M.G.'s allegations to merely explain their actions, the record also demonstrates that the state did not limit its use of M.G.'s letter for that purpose.  In closing argument, the state expressly invited the jury to use M.G.'s letter to determine "what happened in the summer of 2009."

{¶45}  We hold, therefore, that M.G.'s letter concerning her allegations against Trusty was offered for its truth.

### A. Evid.R. 801(D)(1)(b)

{¶46}  The state additionally argues that the letter was admissible under Evid.R. 801(D)(1)(b), as a "prior consistent statement."

{¶47}  Under the hearsay rules, the prior consistent statement of a testifying witness is not admissible to directly bolster that witness's credibility.  But a prior consistent statement can be used to rebut a charge "of recent fabrication or improper influence or motive."  Evid.R. 801(D)(1)(b).  For a statement to qualify under this narrow exception to the hearsay rules, the witness must have made the consistent statement before the alleged fabrication, influence or motive occurred.  *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 107, citing *Tome v. United States*, 513 U.S. 150, 157-158, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995); *State v.*

*Richcreek*, 196 Ohio App.3d 505, 2011-Ohio-4686, 964 N.E.2d 442, ¶ 59 (6th Dist.); *State v. Nichols*, 85 Ohio App.3d 65, 71, 619 N.E.2d 80 (4th Dist.1984).

{¶48}    In this case, M.G. wrote the letter containing the allegations after the divorce, not before. Thus, the state could not use the letter as a "prior consistent statement" to rebut Trusty's claim that she had fabricated the allegations as a result of the divorce. *See* Evid.R. 801(D)(1). As a result, we reject the state's argument that the letter was admissible under Evid.R. 801(D)(1), and we conclude that the letter was inadmissible hearsay.

### B. Plain Error

{¶49}    Because Trusty did not object to the admission of the letter, we review under a plain-error standard. Trusty urges this court to find plain error, claiming that the prejudice from the erroneously admitted evidence was magnified because M.G.'s testimony was not corroborated by any evidence from the crime scene.

{¶50}    Generally, where the inadmissible hearsay is duplicative of admissible evidence elicited from the declarant, who was cross-examined on the matter, and the admissible evidence is sufficient to establish the elements of the offense, the error in the admission of the hearsay is deemed to be harmless. *See Richcreek*, 196 Ohio App.3d 505, 2011-Ohio-4686, 964 N.E.2d 442, at ¶ 43; *State v. Tomlinson*, 33 Ohio App.3d 278, 515 N.E.2d 963 (12th Dist.1986); *State v. Duszynski*, 6th Dist. Lucas No. L-10-1063, 2010-Ohio-6511, ¶ 52; *State v. Griffin*, 8th Dist. Cuyahoga No. 80499, 2002-Ohio-4288, ¶ 97.

{¶51}    And, plain error ordinarily cannot be used to negate the effect of a tactical decision. *See Clayton,* 62 Ohio St.2d at 46-47, 402 N.E.2d 1189; *Noggle*, 140 Ohio App.3d at 746, 749 N.E.2d 309. In our opinion, counsel's failure to object to the admission of the letter was likely the result of a trial strategy to allow the jurors

14

to conclude that Trusty was not hiding any information from them and that M.G.'s allegations were too vague.

{¶52}   We decline to find plain error in this case, even though the state's case was based solely on M.G.'s credibility.  Our judgment is based on our own reading of the record, coupled with what seems to us to have been the likely impact of the inadmissible hearsay on the minds of an average jury.

{¶53}   The case against Trusty was not based on circumstantial evidence.  It was based on M.G.'s testimony, which was subject to vigorous cross-examination.  The hearsay was cumulative to M.G.'s testimony.  And this is not a case where hearsay evidence was used to bolster identification testimony—M.G. knew her assailant.

{¶54}   The jury was able to witness M.G.'s demeanor and judge her credibility.   Her testimony was not impeached, although defense counsel tried to impeach her and to present a reason for her to fabricate the charge against her uncle.

{¶55}   It is likely that the jury believed M.G.'s testimony because Trusty was unable to discredit her truthfulness.  These facts indicate that the admission of the hearsay evidence did not contribute to the conviction and was harmless beyond a reasonable doubt.  *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *State v. Griffin*, 142 Ohio App.3d 65, 79, 753 N.E.2d 967 (1st Dist.2001)

{¶56}   Ultimately, we are unable to find plain error, because we cannot conclude that the outcome of the trial clearly would have been different if the error had not occurred and that a reversal is necessary to avoid a manifest miscarriage of justice.  *Long*, 53 Ohio St.2d 91, 372 N.E.2d 804, paragraphs two and three of the syllabus.  Accordingly, we overrule the second assignment of error.

## IV. Ineffective-Assistance-of-Counsel Claim

{¶57} In his third assignment of error, Trusty argues that he was denied his Sixth Amendment right to the effective assistance of trial counsel. Trusty's claim is based on trial counsel's failure to object when Detective Kilby commented on his pre-arrest silence and when the state offered hearsay evidence concerning M.G.'s prior statements.

{¶58} To prevail on his claim that trial counsel was ineffective, Trusty must demonstrate that trial counsel's performance was both deficient and prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989).

{¶59} With respect to deficiency, Trusty must show that his counsel's performance "fell below an objective standard of reasonableness." *Strickland* at 688. Our scrutiny of defense counsel's performance must be highly deferential, as "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

{¶60} Counsel's failure to make objections is not, by itself, enough to sustain a claim of ineffective assistance of counsel. *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 168; *State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831 (1988). The fact-finder may perceive objections to be disruptive and annoying, and an objection may draw unwanted attention to an issue that might pass without the jury's notice absent the objection. *See State v. Campbell*, 69 Ohio St.3d 38, 53, 630 N.E.2d 339 (1994); *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, 873 N.E.2d 828, ¶ 90. "[C]ompetent counsel may reasonably hesitate to object in the jury's presence." *Campbell* at 53.

{¶61} We first address trial counsel's failure to object to the admission of M.G.'s letter. M.G. disclosed her allegations against Trusty in a letter that she first shared with Graham. The jury was going to learn about the letter, which contained fewer details than M.G. disclosed in her trial testimony.

{¶62} Counsel's strategy at trial was to undermine the jury's confidence in M.G.'s credibility by arguing that M.G.'s trial testimony was inconsistent, that she had fabricated the allegations because of the divorce, and that she simply had not presented enough details of the incident for her allegations to be taken seriously.

{¶63} Arguably, the letter bolstered M.G.'s credibility, and the resolution of the factual issues turned solely on her credibility. The Tenth District Court of Appeals found that trial counsel's failure to object to hearsay evidence constituted the ineffective assistance of counsel where the hearsay bolstered the credibility of the victim's eyewitness testimony and the state lacked corroborating physical evidence or witnesses. *State v. Nichols*, 116 Ohio App.3d 759, 765, 689 N.E.2d 98 (10th Dist.1996).

{¶64} But in this case, unlike in *Nichols*, M.G. knew her assailant and, therefore, the hearsay did not bolster identification testimony. And, in this case, trial counsel may have reasonably believed that it was more advantageous to let the jury see the letter, because the contents of the letter did not materially advance the state's case and Trusty could have been perceived as keeping information from the jury if he had objected.

{¶65} After considering these facts, we conclude that counsel's failure to object to the admission of M.G.'s letter was a part of his trial strategy and that counsel's failure to object to the admission of the letter fell within the wide range of professionally competent assistance.

{¶66} Graham's and Detective Kilby's challenged testimony concerning M.G.'s allegations was not offered to prove the truth of the allegations, but instead to explain the witnesses' actions. As such, the testimony was not hearsay, and it was not excludable on that basis. Therefore, counsel's failure to object did not constitute deficient performance.

{¶67} Finally, counsel's failure to object to Detective Kilby's comment on Trusty's invocation of his Fifth Amendment privilege could have been based on a legitimate trial strategy to not draw further attention to it. *See Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, 873 N.E.2d 828, at ¶ 90; *State v. Ford*, 1st Dist. Hamilton No. C-980957, 1999 Ohio App. LEXIS 5367 *11 (Nov. 12, 1999). The state did not directly elicit or comment on the testimony, the reference was fleeting, and defense counsel diminished the prejudice by quickly eliciting from Detective Kilby on cross-examination that Trusty had cooperated with the police.

{¶68} In summary, although we concede that counsel's strategy was subject to debate, and, in hindsight, it was unsuccessful, any error in not objecting was not "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; *see Clayton*, 62 Ohio St.2d at 49, 402 N.E.2d 1189 (holding that even a "questionable" strategy does not constitute a deprivation of the effective assistance of counsel).

{¶69} Accordingly, we overrule the third assignment of error.

### V. Sufficiency- and Weight-of-the-Evidence Claims

{¶70} In his fourth and fifth assignments of error, which Trusty argues together, he claims that his conviction was not supported by sufficient evidence and that it was against the manifest weight of the evidence.

18

**{¶71}** To prove Trusty guilty of gross sexual imposition, the state had to establish that Trusty purposely had sexual contact with M.G. and that M.G. was under the age of 13 at the time and not his spouse. R.C. 2907.05(A)(4).

**{¶72}** Trusty contends that to meet its burden of proof in this case, the state was required to present physical evidence to corroborate M.G.'s testimony about the sexual crime. This is not the law. *See, e.g.*, *State v. Gingell*, 7 Ohio App.3d 364, 365, 455 N.E.2d 1066 (1st Dist.1982), citing *State v. Tuttle*, 67 Ohio St. 440, 66 N.E. 524 (1903); *State v. Banks*, 71 Ohio App.3d 214, 220, 593 N.E.2d 346 (3d Dist.1991); *In re C.S.*, 10th Dist. Franklin No. 11AP-667, 2012-Ohio-2988, ¶ 29.

**{¶73}** M.G.'s testimony, alone, was sufficient for the state to meet its burden of proof of each element beyond a reasonable doubt. *See State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**{¶74}** And we find nothing in the record of the proceedings below to suggest that the jury, in resolving the conflicts in the evidence adduced on the charged offense, lost its way or created such a manifest miscarriage of justice as to warrant the reversal of Trusty's conviction. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We note that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Thus, we overrule the fourth and fifth assignments of error.

### V. Conclusion

**{¶75}** Accordingly, we affirm the judgment of the trial court.

Judgment affirmed.

**DINKELACKER** and **DEWINE, JJ.,** concur.

Please note:

> The court has recorded its own entry on the date of the release of this opinion.