[Cite as *State v. Kelly*, 2024-Ohio-1864.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230544 |
| | | TRIAL NO. B-2203552-B |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| TERRILL KELLY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 15, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michael J. Trapp*, for Defendant-Appellant.

KINSLEY, **Judge.**

{¶1}    Defendant-appellant Terrill Kelly appeals from the trial court's judgment convicting him, following a jury trial, of possession of cocaine.  In three assignments of error, Kelly argues that the trial court erred in admitting hearsay statements contained in a strip-search report and a contraband report admitted into evidence and referred to by a key witness for plaintiff-appellee the state of Ohio and that his conviction for possession of cocaine was not supported by sufficient evidence and against the manifest weight of the evidence.

{¶2}    Even if we agreed with Kelly that the trial court erred in admitting reports compiled by the state's key witness, the trial court's error was harmless given that these reports were duplicative of admissible evidence elicited from the witness. We further hold that Kelly's conviction for possession of cocaine was supported by sufficient evidence and not against the manifest weight of the evidence.  Accordingly, we affirm the judgment of the trial court.

*Factual and Procedural Background*

{¶3}    The charges against Kelly relate to the search and seizure of the car he was traveling in on June 29, 2022.  Police officers recovered guns and drugs from the car.  They also found drugs on Kelly during a strip-search.  Kelly was subsequently indicted for possession of cocaine, trafficking in cocaine, and having weapons under disability.  The case proceeded to a jury trial on August 21, 2023.

{¶4}    Sergeant John Haynes testified at trial.  He testified that while he was on a patrol shift on the evening of June 29, 2022, he received a dispatch to be on the lookout for a gold-colored car with potentially armed suspects.  He testified that after locating the car and confirming the license plate number, he initiated a traffic stop.

He testified that Kelly was seated in the rear passenger seat, Kelly's mother was seated in the front passenger seat, and Terrance Adams was in the driver's seat. He testified that Kelly and Adams did not have identification on them and that Adams had a warrant for burglary. He testified that he then detained Adams.

{¶5} Corporal Dan Grimes, who provided back-up for Haynes on June 29, 2022, also testified at trial. Additionally, Grimes's body-worn camera ("BWC") footage was played at trial. In his BWC footage, Grimes is seen asking a shirtless Kelly for identification. After Grimes failed to identify Kelly with the information he provided, Kelly was detained and patted down by the officers.

{¶6} Grimes testified that a K-9 unit was called and the car was subsequently searched for drugs. He further testified he found two guns during the search, one under the front passenger seat and one in the seat pocket directly behind the front passenger seat. He also testified that he found a baggie with pills in the passenger side door.

{¶7} Next, Detective Ken Koo testified at trial. He testified that he test fired the gun and swabbed it for DNA. Deputy Schworer also testified at trial, and his BWC footage was played. He testified that, during an interview, Kelly stated that he did not know to whom the guns belonged but was willing to accept blame so that his mother was not charged. He also testified that Adams was charged in connection with drugs that were found in the car.

{¶8} Deputy Nathan Termuhlen, a corrections officer at the Hamilton County Justice Center, also testified at trial. He testified that he typically worked in intake at the Justice Center. He testified that if an individual had a drug or weapons charge, that person would be strip-searched first. He further testified that he conducted strip-

searches alone and that the room where strip-searches were conducted could only hold two people at a time and had no cameras. He testified that when he conducted a strip-search of Kelly, he asked Kelly to face him and remove his shirt, pants, socks, and underwear. He testified that when Kelly removed his underwear, a clear baggie, which was slightly bigger than a golf ball, fell to the floor. He further testified that the baggie was filled with a white chalk-like substance. He testified that the room for strip-searches was cleaned multiple times a day and checked for any leftover items after each search.

{¶9} On cross-examination, Termuhlen testified that, although there were no cameras inside the room where strip-searches were conducted, there were multiple camera views of the intake area outside of that room. The footage from these cameras was not played at trial. He further testified that he wrote a report noting that he had found drugs on Kelly during his strip-search. He testified that Adams was also in the intake area that day. He testified again that Kelly removed his shirt during the strip-search. He also testified that his supervisor signed off on the report. His supervisor did not testify at trial.

{¶10} On redirect examination, Termuhlen testified to the strip-search and contraband reports he compiled after Kelly's strip-search. When the state moved to admit these reports, Kelly's counsel objected. The state argued that the reports were admissible to memorialize Termuhlen's findings from that day. Kelly's counsel argued that Termuhlen had already testified to those findings. The trial court overruled the objection.

{¶11} In the strip-search report dated June 29, 2022, Termuhlen noted that the following was recovered from the search: "bag with a white chalk-like substance

that fell out of [Kelly's] underwear." And in the contraband report, also dated June 29, 2022, Termuhlen again noted that a white chalk-like substance fell out of Kelly's underwear. Both reports were signed by Termuhlen's supervisor.

**{¶12}** Deputy Todd Rizzo also testified at trial. He testified that he transported Kelly to the Justice Center. He further testified that Kelly was wearing a shirt before his strip-search and that he did not recall transporting Adams with Kelly. He also testified that the officer who conducted Kelly's strip-search handed him the baggie that was found on Kelly. He testified that the baggie was sent for testing.

**{¶13}** During a brief recess and in the absence of the jury, the trial court reaffirmed its ruling as to the admissibility of the strip-search and contraband reports. The trial court found that these reports did not contain any hearsay information.

**{¶14}** Brian Scowden then testified. He testified that he was employed by the Hamilton County Crime Laboratory. During Scowden's testimony, the parties stipulated that the baggie found during Kelly's strip-search was 27.770 grams of cocaine. Scowden testified that no DNA test was performed on the baggie.

**{¶15}** Sergeant Joshua Fey, another back-up officer for Haynes on June 29, 2022, also testified at trial and his BWC footage was played. In Fey's BWC footage, he is seen interviewing a shirtless Kelly. Fey commented that it looked as though there was a bulge in the front of Kelly's pants. Fey patted down Kelly's pants and did not find anything. When Fey asked Kelly if he knew anything about the guns, Kelly replied that he did not. Fey then interviewed Adams and also asked him about the guns. Adams maintained that Kelly's mother had nothing to do with the guns.

**{¶16}** At the close of the state's case, Kelly moved for an acquittal under Crim.R. 29, which the trial court overruled.

{¶17} Kelly then testified. He testified that he took the blame for the guns, even though they were not his, so that his mother would not be charged. He also testified that he was not wearing a shirt when he was cuffed and transported to the Justice Center and that Adams was transported with him. He further testified that Adams was strip-searched before him and that there were other individuals detained in the intake center.

{¶18} He testified that during his strip-search, he took off all of his clothes, squatted, and coughed. He testified that Termuhlen then pointed to a baggie in the corner of the room and asked him what that was and if it was his. He testified that he denied that the baggie belonged to him. He testified that Termuhlen then asked the other individuals detained in the intake area if the baggie belonged to them, but no one claimed it. He also testified that when Termuhlen's supervisor asked if the baggie belonged to Kelly, Termuhlen replied that he did not know.

{¶19} After deliberation, the jury found Kelly not guilty of having weapons under a disability and of trafficking in cocaine. But the jury convicted Kelly of possession of cocaine. Kelly was sentenced to an aggregate sentence of 11 years to 16.5 years' incarceration.

{¶20} Kelly now appeals.

### *Hearsay*

{¶21} In his first assignment of error, Kelly argues the trial court erred by admitting the strip-search and contraband reports that Tremuhlen wrote after Kelly's strip-search. Specifically, he argues these reports contained hearsay statements in violation of Evid.R. 802 that bolstered Tremuhlen's testimony.

{¶22} As an initial matter, the parties disagree as to the applicable standard of review. Kelly argues the trial court's ruling should be reviewed for an abuse of discretion. The state argues that Kelly waived all but plain error by failing to renew his objection. But the state's argument is without merit. When the state moved to admit these reports into evidence, Kelly objected and the trial court overruled his objection. Then, on its own accord and not at the request of either party, the trial court informed the parties that it stood by its earlier ruling given that the reports did not contain any hearsay statements. The trial court was merely providing additional context for its earlier ruling. There was no need for Kelly to object again to this statement by the trial court. *See Setters v. Durrani*, 2020-Ohio-6859, 164 N.E.3d 1159, ¶ 12 (1st Dist.).

{¶23} Therefore, if the trial court did indeed admit hearsay evidence, we will review that decision for an abuse of discretion. *State v. Hill*, 1st Dist. Hamilton Nos. C-190638, C-190639, C-190640, and C-190641, 2021-Ohio-294, ¶ 22.

{¶24} "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." (Internal quotation marks omitted.) *State v. Trusty*, 1st Dist. Hamilton Nos. C-120378 and C-120386, 2013-Ohio-3548, ¶ 42. "Hearsay is inadmissible unless it falls within a limited number of exceptions." *Id*. Kelly argues that the statements in the strip-search and contraband reports were offered for the truth of the matter asserted—where the baggie was found in the strip-search room. As discussed above, both reports stated that a baggie filled with a white chalk-like substance fell out of Kelly's underwear. Kelly's conviction for possession of cocaine turned on whether the jury credited his version of events that the baggie was found in the corner of the room

or Tremuhlen's version of events that the baggie fell out of Kelly's underwear. Thus, the statements in these reports were offered for the truth of the matter asserted and constituted hearsay.

{¶25} The state contends that Kelly makes a generalized accusation that these documents contain hearsay instead of offering specific statements for our evaluation. But as Kelly argues, he did identify the specific statements that constituted hearsay, namely Tremuhlen's statement that the baggie fell out of Kelly's underwear.

{¶26} To justify the trial court's ruling, the state raises a single hearsay exception: the prior consistent statement exception under Evid.R. 801(D)(1)(b). We explained this exception to hearsay in *Trusty*:

> Under the hearsay rules, the prior consistent statement of a testifying
>
> witness is not admissible to directly bolster that witness's credibility.
>
> But a prior consistent statement can be used to rebut a charge of recent
>
> fabrication or improper influence or motive. For a statement to qualify
>
> under this narrow exception to the hearsay rules, the witness must have
>
> made the consistent statement before the alleged fabrication, influence
>
> or motive occurred.

(Internal quotation marks and citations omitted.) *Trusty*, 1st Dist. Hamilton Nos. C-120378 and C-120386, 2013-Ohio-3548, at ¶ 47. "In determining whether to admit a prior consistent statement, a trial court should take a generous view of the entire trial setting to determine if there was sufficient impeachment to amount to a charge of fabrication or improper influence or motivation." (Internal quotation marks and footnote omitted.) *State v. Jones*, 1st Dist. Hamilton No. C-080518, 2009-Ohio-4190, ¶ 35.

{¶27} In *Jones*, defense counsel repeatedly implied that two of the state's witnesses were lying during their cross-examination. *Id.* at ¶ 36. Because sufficient impeachment occurred to amount to a charge of fabrication at trial, we held that recorded statements of the state's witnesses fell under the prior consistent statement exception under Evid.R. 801(D)(1)(b). *Id.* at ¶ 37. But here, unlike in *Jones*, there was no charge of fabrication against Tremuhlen *before* these reports were admitted. In fact, on cross-examination, Kelly's counsel asked Tremuhlen:

KELLY'S COUNSEL: Okay. You wrote up a report after this, right?

When you found the drugs, you wrote up a report that you found them?

TREMUHLEN: Yes, ma'am.

KELLY'S COUNSEL: And [your supervisor] signed off on it, correct?

TREMUHLEN: Yes, ma'am.

{¶28} During cross-examination, Kelly's counsel merely confirmed the existence of these reports; she did not suggest that the reports or Tremuhlen's testimony regarding where the baggie was found were false. Though Kelly's testimony later contradicted Tremuhlen's version of events, the state did not offer these reports as exhibits in response to Kelly's testimony. Instead, the state offered these reports as exhibits during redirect examination of Tremuhlen. Thus, these reports were used to bolster Tremuhlen's testimony and not to rebut a charge of fabrication. The prior consistent statement exception under Evid.R. 801(D)(1)(b) is therefore inapplicable here.

{¶29} But, "[g]enerally, where inadmissible hearsay is duplicative of admissible evidence elicited from the declarant, who was cross-examined on the matter, and the admissible evidence is sufficient to establish the elements of the

offense, the error in the admission of the hearsay is deemed to be harmless." *Trusty*, 1st Dist. Hamilton Nos. C-120378 and C-120386, 2013-Ohio-3548, at ¶ 47. The strip-search and contraband reports were duplicative of the admissible testimony elicited from Tremuhlen. And the admissible evidence as a whole was sufficient to establish the elements of possession of cocaine, as will be discussed in more detail below. We hold that any error made by the trial court in admitting this hearsay evidence was harmless and therefore overrule Kelly's first assignment of error.

### *Sufficiency and Manifest Weight*

**{¶30}** Next, Kelly argues his conviction for possession of cocaine was not supported by sufficient evidence and against the manifest weight of the evidence.

**{¶31}** To determine whether a conviction is supported by sufficient evidence, we inquire "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *see State v. Curry,* 1st Dist. Hamilton No. C-190107, 2020-Ohio-1230, ¶ 11. In reviewing the legal sufficiency of the evidence, we consider all of the evidence presented at trial, regardless of whether it was admitted in error. *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, ¶ 17-20.

**{¶32}** But when reviewing a challenge to the manifest weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). Unlike our review of a sufficiency challenge, review of a manifest-weight challenge requires us to independently "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly

lost its way and created a manifest miscarriage of justice." *State v. Powell*, 1st Dist. Hamilton No. C-190508, 2020-Ohio-4283, ¶ 16, citing *Thompkins* at 397. However, we will reverse the trial court's decision to convict and grant a new trial only in " 'exceptional cases in which the evidence weighs heavily against the conviction.' " *State v. Sipple*, 1st Dist. Hamilton No. C-190462, 2021-Ohio-1319, ¶ 7, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶33}** To prove possession under R.C. 2925.11(A), the state had to demonstrate that Kelly knowingly obtained, possessed, or used a controlled substance or a controlled substance analog. The state presented sufficient evidence of these elements at trial. The parties stipulated that the white chalk-like substance found in the strip-search room was cocaine, which is a controlled substance. Termuhlen testified that a baggie filled with a white chalk-like substance fell out of Kelly's underwear during his strip-search. Rizzo also testified that the baggie was found during Kelly's strip-search. We also consider the strip-search and contraband reports. This evidence coupled with Termuhlen's and Rizzo's testimony was sufficient to establish that Kelly knowingly possessed cocaine.

**{¶34}** Kelly argues the state failed to prove knowledge. But as the state points out, R.C. 2925.01, which defines the terms in R.C. 2925.11(A), contains no limitation on the inferences that may be drawn when a controlled substance is present on the defendant's person or in his or her clothing. *State v. Sparks*, 2d Dist. Greene No. 2019-CA-78, 2020-Ohio-4930, ¶ 12. There was sufficient evidence to support an inference that Kelly knowingly possessed cocaine when Termuhlen testified, and also reported right after the strip-search, that the baggie filled with a white chalk-like substance fell

out of Kelly's underwear. *See id.* The location of the baggie inside of Kelly's underwear implies some degree of knowledge of its presence.

**{¶35}** In addition to challenging the sufficiency of the evidence, Kelly also invites us to reweigh the evidence presented at trial and to give more weight to his testimony. But "it is well settled law that matters as to the credibility of witnesses are for the trier of fact to resolve." *State v. Johnson*, 1st Dist. Hamilton No. C-170354, 2019-Ohio-3877, ¶ 52. "Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses." *Id.* Thus, the jury was in the best position to resolve matters of credibility, and we must defer to its decision to give more weight to Tremuhlen's testimony. Moreover, given Kelly's location as the sole passenger in the rear seat of the car, and testimony from Rizzo that he did not recall transporting Adams with Kelly to the Justice Center, the jury did not act unreasonably in crediting Tremuhlen's testimony over Kelly's.

**{¶36}** Accordingly, because Kelly's conviction for possession of cocaine was supported by sufficient evidence and not against the manifest weight of the evidence, we overrule Kelly's second and third assignments of error and affirm the judgment of the trial court.

*Conclusion*

**{¶37}** In sum, even were we to agree with Kelly that the trial court erred in admitting the reports compiled by Termuhlen, we hold that the trial court's error was harmless given that these reports were duplicative of admissible evidence elicited from Termuhlen. We further hold that Kelly's conviction for possession of cocaine was supported by sufficient evidence in light of testimony by Termuhlen and Rizzo that the

12

baggie was found on Kelly's person. And Kelly's conviction was not against the manifest weight of the evidence, because the jury was in the best position as the fact-finder to give more weight to Termuhlen's testimony. Accordingly, we overrule Kelly's assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**BERGERON, P.J.**, and **CROUSE, J.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.