[Cite as *State v. Lawson*, 2018-Ohio-4673.]

COURT OF APPEALS
MORROW COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| JEFFREY W. LAWSON | : | Case No. 17CA0008 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Morrow County
                                Court of Common Pleas, Case No.
                                2016 CR 0040

JUDGMENT:                       Affirmed

DATE OF JUDGMENT:               November 19, 2018

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

MORROW COUNTY PROSECUTOR                OFFICE OF THE PUBLIC DEFENDER

CHARLES S. HOWLAND                      PATRICK T. CLARK
Prosecuting Attorney                    Assistant State Public Defender
                                        250 East Broad Street, Suite 1400
By: DAVID HOMER                         Columbus, Ohio 43215
Assistant Prosecuting Attorney
60 East High St.
Mt. Gilead, Ohio 43338

*Baldwin, J.*

{¶1}   Jeffrey W. Lawson appeals the August 24, 2017 jury verdict finding him guilty of one count of attempted rape, one count of gross sexual imposition, one count of sexual battery and eight counts of rape.  Appellee is the State of Ohio.

**STATEMENT OF FACTS AND THE CASE**

{¶2}   Appellant, Jeffrey Lawson, was charged with eleven sexual offenses involving his step-daughter, K.W. The first offense occurred in 2007 and the last occurred on July 25, 2015 when K.W. disclosed the assaults to her grandmother. A jury found appellant guilty, but appellant contends prosecutorial misconduct deprived him of a fair trial, that he received ineffective assistance of counsel and that those errors cumulatively denied him a fair trial.  He also claims the trial court assessed costs that were not collectible at law.

{¶3}   K.W. claims the first offense occurred in 2007, at the end of June or beginning of July, when she was twelve years old.  K.W. was lying on a couch in appellant's home when he approached and asked her to raise her head so he could sit down.  She did so and appellant put her head in his lap.  Appellant began stroking K.W.'s hair and then began touching her breasts and vagina through her clothes.  After twenty minutes, appellant stood and went to a chair in the same room, but said nothing.

{¶4}   Appellant and D.W., K.W.'s mother, married in 2009 and the family moved to Cardington, Ohio, where the sexual assaults continued.  Appellant would sleep in K.W.'s bed claiming that it was better for his back, that G.W., K.W.'s younger brother, was sleeping in his bed with D.W. or that he was concerned about K.W.'s safety.  K.W. testified

that when he was in her bed, inappropriate touching continued, first through her clothes, then under her clothes and progressing over time to oral sex.  She attempted to resist appellant, but she did not have the strength.

{¶5}  K.W. described a sexual assault that occurred while she had friends at her home for a sleep-over. She was sleeping on the floor amidst the other girls when appellant laid beside her and put his right hand on her vagina over her clothes and then put his hand in her pants.  With the exception of this incident and the 2007 incident, the assaults occurred in K.W.'s bedroom, behind a closed door.

{¶6}  In 2010, K.W. suffered a fracture to her left leg that limited her mobility. Appellant was unemployed at the time and remained home to care for her.  For some time he slept on an inflatable mattress next to the couch in the living room where K.W. slept, and no sexual contact occurred.  She claimed that Appellant resumed the assaults in August 2010 when she was able to return to her bedroom.

{¶7}  Appellant continued to visit K.W.'s bedroom through 2015.  D.W. knew appellant was sleeping in K.W.'s bed, but did not believe any sexual activity was occurring.  D.W. believed appellant was caring for K.W. when her leg was broken, and thereafter was sleeping in her bed because it benefited his back.  Appellant also claimed he slept with K.W., or near her, because he feared he would not be able to help her in the event of a fire if he was sleeping on the upper level of the home. He later admitted that this concern did not compel him to ensure that the smoke alarms were in working order.

{¶8}  K.W. contends that the sexual activity, primarily oral sex, was a frequent occurrence and was performed without her consent.  She did not want the appellant in her bed but felt powerless to object to the instructions of appellant, who she viewed as a

parental authority.  She claims appellant told her this was normal, but she felt that it was wrong.

{¶9}    K.W. did not discuss the assaults with her mother for fear that her mother would not believe her without concrete evidence.  The testimony of D.W., K.W.,'s mother, suggests that the relationship between K.W. and D.W. was imperfect and K.W. may have been right to fear that her allegations would have been rejected.  K.W.'s reluctance to disclose the assaults was overcome when she received two text messages from appellant in July 2015.

{¶10} Appellant, D.W. and K.W. went to a movie and dinner on July 24, 2015 arriving home at approximately 11:30 PM.  K.W. went to bed, D.W. was purportedly in the master bed room and appellant was in the downstairs living room, close to K.W.'s bedroom.  Appellant sent a text message to K.W., crudely stating that he was in the mood for oral sex.  Upon receipt of the text message, K.W. locked and barricaded her bedroom door to keep appellant from entering, but she was unsuccessful.  Appellant forced open the door, engaged in oral sex with K.W. and left her in the bedroom.  Shortly thereafter, appellant sent the following two texts to K.W.:

> FYI I promise to never text you again or come into your room again. From now on I'm going to leave you alone. So barricading your door will no longer be needed to keep me out. The next time I ever go in your room will be the day you leave home. This should be good news for you. I am a disease and seeing what extreme you went to keep me out was an eye opener. There is no feelings there from your end and I accept it. Live life. And live it without me being any big part of it. Sorry for having you to live the way you live in

this house. As far as I'm concerned your room to me doesn't exist. That's something you can take to the bank.

Sorry for everything.

{¶11}  K.W. saved the text messages, but did not bring them to her mother's attention. Instead, she went to her grandmother E.N., D.W.'s mother. E.N. convinced K.W. to disclose the texts to her mother and when she did, D.W. was livid and insisted that appellant leave the home.  She continued to question K.W. about what had happened, but K.W. was reluctant to talk about details, claiming she was just too embarrassed.  D.W. began to doubt her daughter's story and took no further action on the matter.

{¶12}  K.W. moved from the home and lived with her grandparents for some time, but eventually moved back to the home, despite the fact that appellant had returned.  Neither K.W. nor appellant raised the issue of the texts or the sexual assaults after K.W. returned home and no further sexual activity between appellant and K.W. occurred.  Appellant reported that she suffered stress being in the home with appellant, but her need to be with her family outweighed her desire to be away from appellant.

{¶13}  K.W.'s grandmother continued to be concerned about her granddaughter's safety and told her daughter that she planned to report this matter to the authorities if D.W. did not do so.  On September, 28, 2015, E.N. filed a report with the Morrow County Sheriff's Office. The Sheriff's Office called K.W. and asked

her to come in to make a statement. K.W. agreed, appeared at the Sheriff's office, was interviewed and submitted written statements.

**{¶14}** The Morrow County Sheriff's Office interviewed appellant on November 9, 2015 in appellant's attorney's office. Appellant vehemently denied that any sexual activity occurred. Instead, he described this as strictly a sleeping arrangement initially at the request of his children who were frightened, then to insure their safety in the case of an emergency and finally as a more comfortable place to sleep when appellant's back was bothersome.

**{¶15}** When questioned about the text, appellant claimed that the first text of a sexual nature was intended for his wife and mistakenly sent to K.W. Appellant denied he was aware K.W. received this text until days later, after K.W. had disclosed it to her grandmother. As for the lengthy text following the more crude text, appellant explained that he sent it after being abruptly ejected from K.W.'s room.

**{¶16}** During the November 9, 2015 interview, Appellant contended that he sent the text regarding oral sex, deleted it from his phone and remained in the downstairs living room. He heard dogs barking and was concerned about burglaries in the neighborhood, so he decided that he should insure that all the windows in his children's rooms were closed and locked. He first checked G.W.'s room then moved to K.W.'s room. He found K.W.'s door locked and, when he unlocked it, he discovered items were stacked in front of it. He forced the door open, entered the room and locked her window. As he left the room he noticed that K.W. was looking at him and he touched her neck. She told him not to touch

her and to get out of her room. He left her room, drafted and sent the lengthy text listed above.

**{¶17}** As a result of the investigation, appellant was indicted on February 29, 2016 for one count of attempted rape (R.C. 2907.02(A)(1)(b)), a felony of the second degree; one count of gross sexual imposition (R.C. 2907.05(A)(1)), a felony of the fourth degree; one count of sexual battery (R.C. 2907.03(A)(5)), a felony of the third degree; and eight counts of rape (R.C. 2907.02(A)(1)(2)) felonies of the first-degree.

**{¶18}** The trial began on August 21, 2017 and was submitted to the jury for deliberation on August 24, 2017. A Howard charge (*State v. Howard*, 42 Ohio St.3d 18, 537 N.E.2d 188 (1989)) was given to the jury but the circumstances that prompted the administration of that instruction are not made clear in the record. The jury returned with a verdict of guilty on all counts.

**{¶19}** On October 30, 2017 Appellant was sentenced to five years of incarceration for the attempted rape conviction, one and half years of incarceration for the gross sexual imposition conviction and three years of incarceration for the sexual battery conviction, all to run concurrently. For the eight counts of rape the defendant was sentenced to ten years' incarceration on each count to be served concurrently to each other but consecutive to the sentences for the attempted rape, gross sexual imposition, and sexual battery convictions. The court also ordered defendant to pay all costs of prosecution.

**{¶20}** Appellant filed a notice of appeal on November 29, 2017 and submitted four assignments of error:

**{¶21}** "I. REPEATED INSTANCES OF PROSECUTORIAL MISCONDUCT DEPRIVED MR. LAWSON OF A FAIR TRIAL, IN VIOLATION OF HIS FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION, ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION, AND R.C. 2901.05."

**{¶22}** "II. MR. LAWSON WAS DENIED HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO MOVE TO DISMISS HIS INDICTMENT, OBJECT TO REPEATED PROSECUTORIAL MISCONDUCT, OBJECT TO THE ADMISSION OF PREJUDICIAL EVIDENCE, AND PROPERLY IMPEACH THE COMPLAINING WITNESS."

**{¶23}** "III. THE CUMULATIVE ERROR OF THE STATE'S MISCONDUCT AND TRIAL COUNSEL'S FAILURE TO ADEQUATELY IMPEACH K.W. DENIED MR. LAWSON A FAIR TRIAL."

**{¶24}** "IV. THE TRIAL COURT'S ASSESSMENT OF COURT COSTS INCLUDING MILEAGE FEES FOR AN UNSERVED SUBPOENA AND FOR SUBPOENAS SERVED BY THE MORROW COUNTY SHERIFF'S OFFICE UPON ITS OWN EMPLOYEES WAS CONTRARY TO LAW. R.C. 311.17."

## ANALYSIS

**{¶25}** Appellant complains of prosecutorial misconduct in his first assignment of error. The test for prosecutorial misconduct is whether the prosecutor's remarks and comments were improper and if so, whether those remarks and comments prejudicially affected the substantial rights of the accused. *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990), cert. denied, 498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 596 (1990). In

reviewing allegations of prosecutorial misconduct, we must review the complained-of conduct in the context of the entire trial. *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived Appellant of a fair trial based on the entire record. *Lott, supra* at 166. The touchstone of analysis is the "fairness of the trial, not the culpability of the prosecutor." *State v. Gapen,* 104 Ohio St.3d 358, 819 N.E.2d 1047, 2004–Ohio–6548, ¶ 92. The record must be viewed in its entirety to determine whether the allegedly improper remarks were prejudicial. *State v. Treesh*, 90 Ohio St.3d 460, 466 739 N.E.2d 749 (2001).

{¶26} Appellant asserts the prosecutor acted prejudicially when he:

1. Elicited inadmissible and inflammatory opinion testimony from E.N, K.W.'s grandmother;

2. Stated in closing that appellant "doesn't want to talk to the police unless he has his lawyer here";

3. Referred to appellant's text message as "disgusting, vile and grotesque";

4. Commented that Defense counsel "hasn't had the privilege of raising a teenager."

{¶27} Appellant concedes that he did not object to this conduct during the trial. If trial counsel fails to object to the alleged instances of prosecutorial misconduct, the alleged improprieties are waived, absent plain error. *State v. White*, 82 Ohio St.3d 16, 22, 1998–Ohio–363, 693 N.E.2d 772 (1998), citing *State v. Slagle*, 65 Ohio St.3d 597, 604, 605 N.E.2d 916 (1992).

{¶28} "The decision to correct a plain error is discretionary and should be made "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph 3 of syllabus "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894 (1990). Finally, even if we find plain error, we are not obligated to act upon it.  (Crim.R. 52(B)).

{¶29} Appellant reviews each of these incidents and asserts that the admission of the testimony or the making of the statements were prejudicial and impermissible, but does not provide a clear argument that, "but for the error, the outcome of the trial would have been otherwise." *Moreland, supra.*  We have reviewed the record and we do not agree with the assertion that the matters described by appellant qualify as plain error mandating reversal to prevent a manifest miscarriage of justice.

{¶30} K.W.'s grandmother, E.N., delayed several weeks before she notified the Morrow County Sheriff's Office of the allegations of sexual assault of her granddaughter and later permitted her granddaughter to return to live with the appellant. The prosecutor's questions provided an opportunity for E.N. to explain that delay and her rationale for exposing her granddaughter to risk of further abuse. When asked for her opinion of appellant, she stated "I cannot stand to look at him." This comment was merely a summation of her prior testimony where she made it clear that she had a negative opinion of appellant. While these statements are of arguable persuasiveness, we cannot state that their admission rises to the level of plain error.

{¶31} Appellant next claims that prosecutor's comment that he "doesn't want to talk to the police unless he has his lawyer here" was improper because it "impermissibly burdened Mr. Lawson's Fifth Amendment right to counsel." Appellant concedes it would have been appropriate to refer to the statement that he provided to the Morrow County Sheriff's Office in November 2015 but asserts the State went too far by reminding the jury that the interview happened "at the lawyer's office" and "with his lawyer there."

{¶32} Appellant's reliance on the cases he cited in this section of his brief is misplaced because appellant testified during the trial. "The safeguards against self-incrimination are for the benefit of those who do not wish to become witnesses in their own behalf and not for those who do." *Combs v. Coyle*, 205 F.3d 269, 281 (6th Cir.2000) "When a defendant testifies at trial, the defendant has "cast aside his cloak of silence." *Jenkins v. Anderson*, 447 U.S. 231, 238 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980). Because appellant testified at trial, appellant relinquished his right to remain silent and surrendered the protections described in the cases he cites in his brief. However, it is more significant that the prosecutor's comments occurred during his summation when he referred to evidence that was presented to the jury without objection.

{¶33} Detective Gibson of the Morrow County Sheriff's Office did interview appellant on November 9, 2015, the interview was recorded and the recording was transcribed. During trial, Detective Smith of the Morrow County Sheriff's Office, identified State's Exhibit 2-B as the transcript of that interview by reading the caption on the cover page which states in part that the statement was "recorded at the law office of Earl K. Desmond," appellant's trial counsel. The text of the recorded statement also confirms that

it was recorded in that office with Attorney Desmond present. Appellant did not object to the presentation of this evidence to the jury or the admission of State's Exhibit 2-B.

{¶34} Appellant's desire to have his attorney present during his statement was introduced during trial without objection, and the prosecutor was free to comment upon such evidence. *State v. Elliott,* 91 Ohio App.3d 763, 773, 633 N.E.2d 1144 (3rd Dist.1993). The prosecutor was recounting the testimony already heard by the jury. *State v. Scott*, 6th Dist. Lucas No. L-01-1337, 2003-Ohio-1402, ¶ 19, on reconsideration, 6th Dist. Lucas No. L-01-13372003-Ohio-1868, ¶ 19. "Both the prosecution and the defense have wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom." *State v. Stephens*, 24 Ohio St.2d 76, 82, 53 O.O.2d 182, 263 N.E.2d 773 (1970), *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990). The prosecutor's comments were well within the boundaries of commentary on the evidence and therefore we do not find that the failure to exclude the prosecutor's comment was plain error creating a miscarriage of justice.

{¶35} Appellant next complains of the prosecutor's characterization of his text message as "vile, disgusting and grotesque." First, we do not believe this is an unreasonable characterization of that message, but more importantly, the prosecutor used this description to highlight the emotional forcefulness of the statement in the context of the element of force in the charge of rape, contending that this statement is powerful and an attempt to assert control over the victim. As noted above, the parties "have wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom." *Stephens, supra.* This comment in the context of the argument that the appellant committed multiple sexual offenses against his step-daughter over a

period of years is not unfairly prejudicial and we cannot agree that it created manifest injustice that warrants a new trial.

**{¶36}** The prosecutor's comment regarding the defense attorney's lack of experience raising teenagers might be of questionable relevance, but it is likely of little consequence in this case. It was a brief, fleeting, comment that was not dwelt upon by the prosecutor and, as we noted above, counsel is given wide latitude in summation. We cannot conclude this statement had any impact on the outcome of the case or affected the substantial rights of appellant. *State v. Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240.*

**{¶37}** The statements of E.N., and the comments of the prosecutor cannot be described as plain error in the context of this case and they do not comprise "exceptional circumstances" that require correction to "prevent a manifest miscarriage of justice." After considering all of appellant's claims of prosecutorial misconduct, in light of the entire record in this case, we believe it is clear beyond a reasonable doubt that, even absent the prosecutor's comments made during closing argument and the comments of E.N., the jury would still have found appellant guilty of these offenses. *State v. Smith*, 14 Ohio St.3d 13, 470 N.E.2d 883 (1984). For those reasons, and for the reasons set forth above, appellant's first assignment of error is overruled.

**{¶38}** In his second assignment of error appellant complains that his trial was not fair as a result of ineffective assistance of counsel. He claims that the performance of his trial counsel fell below an objective standard when he failed to move to dismiss the indictment, failed to object prosecutorial misconduct, failed to object to the admission of prejudicial evidence and failed to properly impeach the complaining witness.

**{¶39}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v.* Bradley, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." *State v. Carter,* 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995), citing *Lockhart v. Fretwell,* 506 U.S. 364, 370, 113 S. Ct. 838, 122 L.Ed.2d 180 (1993).

**{¶40}** In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. *Bradley, supra* at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists counsel's conduct fell within the wide range of reasonable professional assistance. *Id.*

**{¶41}** Appellant claims that his attorney's failure to object to the errors listed in the first assignment of error establishes ineffective assistance of counsel. Trial counsel's failure to object to those alleged errors could be reasonably interpreted as tactical decisions designed to not bring attention to what may or may not be objectionable matter, so we reject the assertion that the failure to object is evidence of ineffective assistance of counsel. Because this appears to be a reasonable tactical decision we cannot convert it

to a judicial error. *State v. Clayton*, 62 Ohio St.2d 45, 46–47, 402 N.E.2d 1189 (1980); *State v. Noggle,* 140 Ohio App.3d 733, 746, 749 N.E.2d 309 (3d Dist.2000) as cited in State *v. Trusty,* 1st Dist. Hamilton No. C-120378, 2013-Ohio-3548, ¶ 36.

**{¶42}** Appellant next contends that his trial counsel was ineffective for failing to file a motion to dismiss the indictment. In this portion of the assignment appellant relies upon the case of *Valentine v. Konteh,* 395 F.3d 626 (6th Cir.2005). Because the facts in this case are distinguishable from the facts in *Valentine,* we do not agree that the failure to file the motion is evidence of ineffective assistance of counsel. The failure did not produce a result that was unreliable or proceeding that was fundamentally unfair. *Carter, supra.*

**{¶43}** First, we note that the United States District Court in the Western District of Pennsylvania has criticized the use of *Valentine* as having little value in the context of the facts of the case at bar. That court noted that the decision "is hardly robust precedent even within the Sixth Circuit, being usually cited for the general proposition that large time windows in child abuse prosecutions are tolerable." *Crawford v. Lamas*, 2016 WL 10908611, *8 (Feb. 17, 2016), *report and recommendation adopted in part, rejected in part,* 2016 WL 10908614 (Mar. 16, 2016), aff'd sub nom. *Crawford v. Pennsylvania,* 714 Fed.Appx. 177 (3d Cir.2017). The Seventh District Court of Appeals was critical of a reference to *Valentine* and listed distinctions that are applicable to this case "(1) the indictment here did distinguish the various counts; (2) the bill of particulars provided more distinguishing details about the crimes; and (3) the evidence presented at trial demonstrated that there were more instances of the crimes than were charged, not less." *State v. Stefka*, 7th Dist. No. 10 MO 7, 2012-Ohio-3004, 973 N.E.2d 786, ¶ 49.

**{¶44}** The grand jury in *Valentine* issued a forty-count indictment, charging Valentine with twenty counts of child rape and twenty counts of felonious sexual penetration of a minor. Each count cited the relevant statutory language and the indictment stated that the offenses occurred in the family home between March 1, 1995 and January 16, 1996. No further information was included to differentiate one count from another. The bill of particulars did not offer further differentiation among the counts. Instead, it merely restated the allegations and identified the family home as the location of all forty offenses *Valentine, supra at* 629. The only witness to testify as to the number of assaults was the victim herself when she stated that various offenses occurred on "about 20," "about 15," or "about 10" occasions with the only distinction being the type of offense. The *Valentine* court rejected the claim regarding the lack of time and date specific counts, but focused on the lack of any differentiation in the charges:

> The problem in this case is not the fact that the prosecution did not provide the defendant with exact times and places. If there had been singular counts of each offense, the lack of particularity would not have presented the same problem. Instead, the problem is that within each set of 20 counts, there are absolutely no distinctions made. Valentine was prosecuted for two criminal acts that occurred twenty times each, rather than for forty separate criminal acts. In its charges and in its evidence before the jury, the prosecution did not attempt to lay out the factual bases of forty separate incidents that took place. *633. Instead, the 8-year-old victim described "typical" abusive behavior by Valentine and then testified that the

"typical" abuse occurred twenty or fifteen times. Outside of the victim's estimate, no evidence as to the number of incidents was presented.

*Valentine supra* at 632–33.

**{¶45}** In the case at bar the counts are differentiated by date and by type of offense and there are singular counts of each offense. The first count, attempted rape, is alleged to have occurred on July 24, 2015 and the second count, gross sexual imposition, occurred between June 1, 2007 and July 31, 2007. The remaining charges, one count of sexual battery and eight counts of rape are distinguished by the dates in which they are alleged to have occurred. Even the *Valentine* court acknowledged that "differentiation will often require reference to date ranges or time ranges or certain locations or certain actions. But, differentiation does not require overly-burdensome precision." *Valentine*, *supra* at 637. The bill of particulars provided further distinguishing details about the crimes and the evidence presented at trial demonstrated there were more instances of the crimes that were charged, not fewer. *Stefka, supra.*

**{¶46}** This court has addressed analogous facts to the case at bar and found *Valentine* inapplicable. *State v. Michael,* 5th Dist. Tuscarawas No. 10AP090034, 2011-Ohio-2691, ¶¶ 18-19. Impreciseness and inexactitude of the temporal evidence at trial is not "per se impermissible or necessarily fatal to a prosecution." *State v. Robinette*, 5th Dist. Morrow No. CA-652, 1987 WL 7153, *2. Further, in *Robinette, supra* at *3 this court stated:

> [w]e note that these particular cases often make it more difficult to ascertain specific dates. The victims are young children who may reasonably be unable to remember exact times and dates of psychologically traumatic

sexual abuses. This is especially true where the crimes involve several instances of abuse spread out over an extended period of time. *State v. Humfleet* (Sept. 9, 1985), Clermont App. No. CA84-04-031, unreported, at 15. The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse. An allowance for reasonableness and inexactitude must be made for such cases considering the circumstances.

**{¶47}** Appellant's trial counsel was not ineffective as a result of not filing a motion to dismiss the indictment. As noted above, the record does not support any conclusion that the indictment would have been dismissed upon filing such motion. We cannot state counsel's decision was a substantial violation of his essential duties to his client or that appellant has rebutted the presumption's counsel's decision fell within the wide range of professional assistance.

**{¶48}** As to appellant's allegation that his trial counsel was ineffective for failing to properly cross-examine K.W. we note that the record contains a lengthy cross-examination of K.W. comprising over fifty pages of transcript. K.W. was the alleged victim of sexual abuse by her stepfather beginning before she was a teenager, creating a very emotional situation that any rational attorney would approach with great care. We cannot conclude that counsel's decision regarding the subject and extent of cross examination of K.W. was not a carefully considered trial strategy and "[w]e will not second-guess the strategic decisions counsel made at trial even though appellate counsel now argue that they would have defended differently." *State v. Post*, 32 Ohio St.3d 380, 388, 513 N.E.2d

754 (1987) as cited in *State v. Mason,* 82 Ohio St.3d 144, 169, 1998-Ohio-370, 694 N.E.2d 932 (1998).

**{¶49}** For the above reasons, we do not find that counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. Appellant's second assignment of error is overruled.

**{¶50}** Appellant's third assignment of error relies upon our finding in his favor in the first two assignments of error to support his contention that cumulative error prevented a fair trial for appellant. In *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995), the Supreme Court of Ohio held, pursuant to the cumulative error doctrine, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." With respect to appellant's arguments that we have already addressed, we do not find multiple instances of harmless error triggering the cumulative error doctrine. *State v. Scott,* 5th Dist. Richland No.11 CA80, 2012–Ohio3482, ¶ 75–76, appeal not allowed, 133 Ohio St.3d 1491, 2012–Ohio–5459, 978 N.E.2d 910.

**{¶51}** Appellant's third assignment of error is overruled.

**{¶52}** Appellant claims in his fourth assignment of error that "[t]he trial court's assessment of court costs including mileage fees for an unserved subpoena and for subpoenas served by the Morrow County Sheriff's Office upon its own employees was contrary to law." Appellant does not deny that the court may impose costs, but only that cited expenses may not be collected as costs. In its entry of October 20, 2017, the trial

court ordered that the defendant shall pay all costs of prosecution as is required by R.C. 2947.23(A)(1). (Judgment Entry of Sentence, October 20, 2017, Docket number 63, page 3).   The trial court ordered the payment of costs, but did not specify an amount, presumably because the amount of costs had not yet been calculated, a typical practice. *State v. Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164, ¶ 19.

**{¶53}**  The court docket reflects the amounts described by the appellant, but there is no corresponding order for appellant to pay those specific amounts that would be subject to review.  Further, because the trial court "retains jurisdiction to waive, suspend, or modify the payment of the costs of prosecution, *** at the time of sentencing or at any time thereafter," (R.C. 2947.23(C)) appellant has a remedy available that would create a suitable record for review in this case. However, at this time, the record before us lacks sufficient facts for our review to determine whether the proper procedure is being followed or whether the prosecution costs have been reduced to judgment. Therefore, we have nothing to pass upon as the record stands before this court. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, 966 N.E.2d 958, ¶ 126 (12th Dist.).  Accordingly, the issue does not appear to be ripe for our consideration.

**{¶54}**  Appellant's fourth assignment of error is overruled.

{¶55}  The decision of the Morrow County Court of Common Pleas is affirmed.

By: Baldwin, J.

Gwin, P.J. and

Hoffman, J. concur.